PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARK J. MCBURNEY; ROGER W.
HURLBERT,

      *Plaintiffs-Appellants,*

      and

BONNIE STEWART, Professor,

      *Plaintiff,*

      v.

NATHANIEL L. YOUNG, Deputy
Commissioner and Director,
Division of Child Support
Enforcement, Commonwealth of
Virginia; THOMAS C. LITTLE, Real
Estate Assessment Division,
Henrico County, Commonwealth
of Virginia,

      *Defendants-Appellees,*

      and

HON. KENNETH T. CUCCINELLI, II,
Attorney General, Commonwealth
of Virginia; HON. SAMUEL A.
DAVIS, Real Estate Assessment
Division, Henrico County,
Commonwealth of Virginia,

      *Defendants.*

No. 11-1099

The Reporters Committee for Freedom of the Press; American Society of News Editors; Association of Capitol Reporters and Editors; Citizen Media Law Project; The E. W. Scripps Company; First Amendment Coalition; Hearst Corporation; Magazine Publishers of America, Incorporated; Maryland D.C. Delaware Broadcasters Association; NBCUniversal Media, LLC; The National Press Club; National Press Photographers Association; NPR, Incorporated; Newspaper Association of America; The Newspaper Guild; North Jersey Media Group, Incorporated; Radio Television Digital News Association; Society of Professional Journalists; Student Press Law Center; Time, Incorporated; Virginia Coalition for Open Government; The Washington Post,

*Amici Supporting Appellants,*

Local Government Attorneys of
Virginia, Incorporated; Virginia
Municipal League; Virginia
Association of Counties,

    *Amici Supporting Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:09-cv-00044-JRS)

Argued: October 25, 2011

Decided: February 1, 2012

Before NIEMEYER, GREGORY, and AGEE,
Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Niemeyer and Judge Gregory joined.

## COUNSEL

**ARGUED:** Leah Marie Nicholls, INSTITUTE FOR PUBLIC REPRESENTATION, Georgetown University Law Center, Washington, DC, for Appellants. Earle Duncan Getchell, Jr., OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia; Benjamin Adelbert Thorp, IV, OFFICE OF THE COUNTY ATTORNEY, Henrico, Virginia, for Appellees. **ON BRIEF:** Stephen W. Bricker, BRICKER LAW FIRM, PC, Richmond, Virginia; Brian Wolfman, INSTITUTE FOR PUBLIC REPRESENTATION, Georgetown University Law

Center, Washington, DC, for Appellants. Kenneth T. Cuccinelli, II, Attorney General, Stephen R. McCullough, Senior Appellate Counsel, Craig M. Burshem, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia; Joseph P. Rapisarda, Jr., County Attorney, Karen M. Adams, Senior Assistant County Attorney, OFFICE OF THE COUNTY ATTORNEY, Henrico, Virginia, for Appellees. Lucy A. Dalglish, Mark R. Caramanica, Christine L. Beckett, THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Arlington, Virginia, for Amici Supporting Appellants; Kevin M. Goldberg, FLETCHER, HEALD & HILDRETH, PLC, Arlington, Virginia, for American Society of News Editors, Association of Capitol Reporters and Editors, and Maryland D.C. Delaware Broadcasters Association; David Ardia, Citizen Media Law Project, Berkman Center for Internet & Society, Cambridge, Massachusetts, for Citizen Media Law Project; David M. Giles, Cincinnati, Ohio, for The E.W. Scripps Company; Peter Scheer, First Amendment Coalition, San Rafael, California, for First Amendment Coalition; Jonathan R. Donnellan, HEARST CORPORATION, New York, New York, for Hearst Corporation; Christopher J. Nolan, New York, New York, for Magazine Publishers of America, Incorporated; Beth R. Lobel, NBCUniversal Media, LLC, New York, New York, for NBCUniversal Media, LLC; Charles D. Tobin, HOLLAND & KNIGHT LLP, Washington, D.C., for The National Press Club; Mickey H. Osterreicher, Buffalo, New York, for National Press Photographers Association; Joyce Slocum, Denise Leary, Ashley Messenger, Washington, D.C., for NPR, Incorporated; Rene P. Milam, Arlington, Virginia, for Newspaper Association of America; Barbara L. Camens, BARR & CAMENS, Washington, D.C., for The Newspaper Guild-CWA; Jennifer Borg, General Counsel, NORTH JERSEY MEDIA GROUP INC., Hackensack, New Jersey, for North Jersey Media Group, Incorporated; Kathleen A. Kirby, WILEY REIN LLP, Washington, D.C., for Radio Television Digital News Association; Bruce W. Sanford, Bruce D.

Brown, Laurie A. Babinski, BAKER & HOSTETLER LLP, Washington, D.C., for Society of Professional Journalists; Frank D. LoMonte, STUDENT PRESS LAW CENTER, Arlington, Virginia, for Student Press Law Center; Andrew Lachow, Vice President and Deputy General Counsel-Litigation, TIME INC., New York, New York, for Time, Incorporated; Megan Rhyne, VIRGINIA COALITION FOR OPEN GOVERNMENT, Williamsburg, Virginia, for Virginia Coalition for Open Government; Eric N. Lieberman, James A. McLaughlin, Washington, D.C., for The Washington Post, Amici Supporting Appellants. R. Lucas Hobbs, ELLIOTT LAWSON & MINOR, PC, Bristol, Virginia, for Amici Supporting Appellees.

---

**OPINION**

AGEE, Circuit Judge:

Mark J. McBurney and Roger W. Hurlbert (collectively "Appellants") appeal the district court's award of summary judgment to the Deputy Commissioner and Director of the Division of Child Support Enforcement for the Commonwealth of Virginia and the Director of the Real Estate Assessment Division of Henrico County, Virginia (collectively "Appellees"). The district court held that Virginia's Freedom of Information Act, Va. Code Ann. § 2.2-3700 et seq. (2011), ("VFOIA") does not violate the Appellants' rights under the Privileges and Immunities Clause (U.S. Const. art. IV, § 2, cl. 1) or Hurlbert's rights under the dormant commerce clause of the United States Constitution. For the reasons set forth below, we affirm the judgment of the district court.

I.

This case is before us for the second time. Our prior decision concerned certain preliminary jurisdictional matters

regarding parties and claims not at issue in the present appeal. Of relevance in that proceeding was our determination that the Appellants had standing to sue the Appellees. *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010). We remanded the case for the district court to consider the Appellants' claims on the merits. *Id.* at 404.

We begin by briefly setting out the statutory framework of the VFOIA because it is central to the proceedings in this case. In enacting the VFOIA, the Virginia General Assembly stated its purpose to:

> ensure[ ] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted. The affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government. Unless a public body or its officers or employees specifically elect to exercise an exemption provided by this chapter or any other statute, every meeting shall be open to the public and all public records shall be available for inspection and copying upon request. All public records and meetings shall be presumed open, unless an exemption is properly invoked.

Va. Code Ann. § 2.2-3700(B), para. 1. The statute provides, in relevant part:

> Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records. Access to such records shall not be denied to citizens of the Commonwealth, representatives of newspa-

pers and magazines with circulation in the Common-
wealth, and representatives of radio and television
stations broadcasting in or into the Commonwealth.
. . .

Va. Code Ann. § 2.2-3704(A).

McBurney is a citizen of Rhode Island. He has ties to his
former residence of Virginia through divorce, child custody,
and child support decrees adjudicated in the Commonwealth.

When McBurney's former wife defaulted on child support
obligations, he asked the Virginia Division of Child Support
Enforcement ("DCSE") to file a petition for child support on
his behalf. Although the petition was eventually filed and
granted, there was a nine-month delay in his ability to collect
child support payments. McBurney then filed a VFOIA
request with the DCSE seeking, inter alia, "all emails, notes,
files, memos, reports, policies, [and] opinions" pertaining to
him, his son, and his ex-wife, as well as "all documents
regarding his application for child support" and the handling
of child support claims where one spouse resides in a foreign
country. McBurney asserts the DCSE possessed documents
that would assist him in determining how his petition was pro-
cessed and why the delay occurred.

The DCSE denied McBurney's VFOIA request on the
grounds that the information was confidential and protected
under Va. Code Ann. §§ 63.2-102 and -103, and because
McBurney was not a citizen of the Commonwealth of Vir-
ginia. A second substantively identical request was also
denied by DCSE solely on the grounds that McBurney was
not a citizen of the Commonwealth. While McBurney later
sought and acquired most of the requested information under
Virginia's Government Data Collection and Dissemination
Practices Act, Va. Code Ann. §§ 2.2-3800 et seq., he did not
receive all of the information he had requested in his earlier
VFOIA requests.

Hurlbert is a citizen of California and the sole proprietor of Sage Information Services. Hurlbert is in the business of requesting real estate tax assessment records for his clients from state agencies across the United States, including Virginia. Hulbert filed a VFOIA request for assessment records for certain real estate parcels in Henrico County, Virginia with the Henrico County Real Estate Assessor's Office. Hurlbert's request was denied on the ground that he is not a citizen of the Commonwealth.

The Appellants subsequently filed an amended verified complaint in the District Court for the Eastern District of Virginia seeking declaratory and injunctive relief under 42 U.S.C. § 1983. In their complaint they pled that the "citizens-only provision [of VFOIA] impermissibily discriminates against [them] by denying them access to public records solely because [they] are not Virginia citizens." (J.A. 8A.) Relying on the Privileges and Immunities Clause, the Appellants asserted that VFOIA impermissibly denies them the "right to participate in Virginia's governmental and political processes" by barring them "from obtaining information from Virginia's government." (J.A. 15A-16A.)

Hurlbert also raised a separate claim alleging that VFOIA's citizens-only provision "violates the dormant Commerce Clause because it grants Virginia citizens an exclusive right of access to Virginia's public records" and thus "bar[s] [him] from pursuing any business stemming from Virginia public records on substantially equal terms with Virginia citizens." (J.A. 18A.)

As noted earlier, after deciding the preliminary matters concerning jurisdiction and justiciability, we remanded the case to the district court for consideration on the merits. Upon remand, the parties filed cross motions for summary judgment. The district court granted summary judgment to the Appellees, holding that VFOIA's citizens-only provision did not violate the Appellants' rights under the Privileges and

Immunities Clause or Hurlbert's rights under the dormant Commerce Clause. *McBurney v. Cuccinelli*, 780 F. Supp. 2d 439 (E.D. Va. 2011).

First, the district court held that the Appellants failed to show that VFOIA's citizens-only provision burdened a fundamental right protected by the Privileges and Immunities Clause. The court rejected two of the asserted rights, which it identified as access to government information and advocacy for one's own economic interests, as concepts that did not fall within the scope of the Privileges and Immunities Clause. *Id.* at 447-51.

Separately, the district court determined that Hurlbert was "engage[d] in a common calling within the meaning of the Privileges and Immunities Clause." *Id.* at 447. However, the district court found that the VFOIA did not infringe Hurlbert's right to pursue a common calling: "VFOIA's distinction between citizens and noncitizens is not a regulation of business and does not constitute discrimination pertaining to a common calling. The statute's effect on Hurlbert's ability to practice his common calling is merely incidental." *Id.*

The district court also noted that VFOIA did not infringe McBurney's ability to access Virginia's courts because "if McBurney were to file a lawsuit in Virginia, he would be treated the same as a citizen litigant." *Id.* at 449. Distinguishing the fundamental right of access to courts under the Privileges and Immunities Clause from the sort of claim McBurney asserted, the district court noted that access to "documents to help decide whether he should file a lawsuit," was something "the Constitution does not require that noncitizens be given." *Id.*

Because the district court concluded VFOIA did not violate the Appellants' fundamental rights under the Privileges and Immunities Clause, it did "not reach the issues of whether Virginia has a substantial reason for discriminating against

noncitizens with respect to requesting public records or whether the discrimination bears a substantial relationship to the state's objectives," both of which would also have been necessary for the Appellants' claims to succeed. *Id.* at 451.

The district court then turned to Hurlbert's contention that VFOIA violates the dormant commerce clause because it negatively impacts his ability to pursue his business in Virginia on substantially equal terms as Virginia citizens. Because the "VFOIA does not implicate principles of economic protectionism" and its "purpose is not to protect in-state business, but, instead, . . . to hold government officials accountable and prevent secrecy in government," the court rejected this argument. *Id.* at 453. The district court concluded that while the VFOIA "may have some incidental impact on out-of-state business, the goal is not to favor Virginia business over non-Virginia business" and thus the statute did not violate the dormant Commerce Clause. *Id.*

Having found no infringement of either the Appellants' rights under the Privileges and Immunities Clause or Hurlbert's rights under the dormant Commerce Clause, the district court granted the Appellees' motion for summary judgment.

The Appellants noted a timely appeal and we have jurisdiction under 28 U.S.C. § 1291.

## II.

Raising the same arguments they did in the district court, the Appellants appeal the district court's rejection of their claim that the VFOIA's citizens-only provision violates the Privileges and Immunities Clause.[1] In addition, Hurlbert chal-

---

[1]Appellants do not contend that they fall under the media provision or otherwise make any argument related to that portion of the VFOIA. Instead, they direct their contentions to the VFOIA's general policy of providing records solely to "citizens of the Commonwealth." *Cf.* Va. Code Ann. § 2.2-3704(A).

lenges the district court's determination that the provision does not violate the dormant Commerce Clause.

We review the constitutionality of a statute *de novo*, *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995), and now consider the two constitutional arguments raised by the Appellants in turn.

## A.   The Privileges and Immunities Clause

The Privileges and Immunities Clause of Article IV of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[2] U.S. Const. art. IV, § 2, cl. 1. "The object of the Privileges and Immunities Clause is to 'strongly . . . constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998) (citing *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868)). The Clause thus "provides important protections for nonresidents who enter a State," and while

---

Amici supporting the Appellants on appeal constitute a number of media organizations and First Amendment public interest organizations. While they join the Appellants in arguing that the citizens-only limitation violates the Privileges and Immunities Clause, some of them also appear to represent different interests than the Appellants given that they may fall under the media exception to the VFOIA. Because the contours of the media exception are not at issue with regard to the Appellants, we need not consider it, nor do we consider whether Amici could raise distinct arguments as to the applicability of the citizens-only provision of the VFOIA to their own situations. This opinion considers only the arguments the Appellants raise regarding the constitutionality of the VFOIA.

[2]In the Privileges and Immunities Clause context, "citizen" and "resident" are interchangeable terms. *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 279 n.6 (1985).

"[t]hose protections are not 'absolute,' . . . the Clause 'does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (citations omitted).

The Supreme Court has articulated a two-step inquiry to determine whether "claims that a citizenship or residency classification offends privileges and immunities protections." *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988).

> First, the activity in question must be sufficiently basic to the livelihood of the Nation . . . as to fall within the purview of the Privileges and Immunities Clause . . . . Second, if the challenged restriction deprives nonresidents of a protected privilege, [the court] will invalidate it only if [it] conclude[s] that the restriction is not closely related to the advancement of a substantial state interest.

*Id.* at 64-65 (internal citations and quotation marks omitted).

Although the Privileges and Immunities Clause "establishes a norm of comity," it does not "specify[ ] the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment." *Austin v. New Hampshire*, 420 U.S. 656, 660 (1975). It has been left to the Supreme Court and lower courts to define the scope of the Privileges and Immunities Clause, as "its contours . . . are not well developed." *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 379-80 (1978).

Significantly, the "fundamental rights" protected under the Privileges and Immunities Clause are not identical to the "fundamental rights" protected by other constitutional provisions and cover a much narrower range of activity. The Privileges and Immunities Clause is geared toward

secur[ing] to citizens of each State in the [United] States . . . those privileges and immunities which are common to the citizens in the latter States under their constitution and laws by virtue of their being citizens. Special privileges enjoyed by citizens in their own States are not secured in other States by this provision.

*Paul*, 75 U.S. (8 Wall.) at 180. As a result, the Supreme Court's jurisprudence has recognized that states are permitted to distinguish between residents and nonresidents so long as those distinctions do not "hinder the formation, the purpose, or the development of a single Union of those States. *Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.*" *Baldwin*, 436 U.S. at 383 (emphasis added). Toward that end, the Supreme Court has "held that certain rights are fundamental [under the Privileges and Immunities Clause], including the rights to: (1) practice a trade or profession; (2) access courts; (3) transfer property; and (4) obtain medical services." *McBurney*, 780 F. Supp. 2d at 447 (internal citations omitted).

In arguing for reversal of the grant of summary judgment to the Appellees, the Appellants contend the VFOIA infringes on rights they identify as "equal access to information," "equal access to courts,"[3] and the "ability to pursue their economic interests on equal footing." Separately, Hurlbert argues the VFOIA impermissibly burdens his right to pursue a common calling. McBurney also posits that the VFOIA infringes his "ability to advocate for his [political] interests and the interests of others similarly situated." (Opening Br. 26.) Only two of these asserted rights — the right to access courts and the right to pursue a common calling — are among the limited

---

[3]Although Appellants jointly raise this argument in the opening brief, it appears that McBurney was the only one to advance this claim in the district court.

"fundamental rights" the Supreme Court has previously iden-
tified as protected by the Privileges and Immunities Clause.

### 1.   The Right to Pursue a Common Calling

Hurlbert contends the VFOIA unduly burdens his right to
pursue a common calling because it prevents him from prac-
ticing his trade, which he defines as obtaining records related
to real property on behalf of his clients, in Virginia. Even
though the VFOIA does not regulate professions, Hurlbert
asserts the statute nonetheless burdens his right to pursue a
common calling because it prevents him from using his pri-
mary means of acquiring government records, that is, by per-
sonally filing a freedom of information act request. He further
asserts the district court erred in concluding VFOIA did not
impermissibly infringe on his claimed fundamental right
because any effect was "merely incidental." This is so, Hurl-
bert contends, because upon showing any burden to a funda-
mental right protected by the Privileges and Immunities
Clause, the analysis shifts to whether the state can justify its
action.

The ability to pursue one's profession or "common calling"
is one of the limited number of foundational rights protected
under the Privileges and Immunities Clause. *Toomer v. Wit-
sell*, 334 U.S. 385, 396 (1948); *see also United Bldg. & Con-
str. Trades Council v. Camden*, 465 U.S. 208, 219 (1984)
("Certainly, the pursuit of a common calling is one of the
most fundamental of those privileges protected by the
Clause."). Indeed, "[m]any, if not most, of [the Supreme
Court's] cases expounding the Privileges and Immunities
Clause have dealt with this basic and essential activity." *Cam-
den*, 465 U.S. at 219. The Supreme Court has found the fol-
lowing provisions to impermissibly burden an individual's
right to pursue a common calling — requiring nonresidents to
pay substantially more for annual licenses to trade in goods
(*Ward v. Maryland*, 79 U.S. (12 Wall.) 418 (1870)); requiring
nonresidents to pay substantially more to engage in a particu-

lar profession (*Toomer*, 334 U.S. 385); requiring nonresident commercial fisherman to pay ten times more for commercial fishing licenses (*Mullaney v. Anderson*, 342 U.S. 415 (1952)); resident-based hiring preferences for employment in the field of oil and gas development (*Hicklin v. Orbeck*, 437 U.S. 518 (1978)); limiting admission to the practice of law to residents (*Piper*, 470 U.S. 274); local rule limiting admission to the practice of law within a federal district court bar to individuals who lived in or maintained an office in the state, even if nonresidents could be admitted pro hac vice (*Frazier v. Heebe*, 482 U.S. 641 (1987)); and limiting admission by motion to the practice of law to residents, even if nonresidents could be admitted by examination (*Friedman*, 487 U.S. 59). Similarly, in *Tangier Sound Waterman's Ass'n v. Pruitt*, 4 F.3d 264 (4th Cir. 1993), we held that a Virginia statute "tripling the nonresident commercial fisherman's harverster's license fee" "effects a restriction" on the "right to earn a living." *Id.* at 265, 266. And in *O'Reilly v. Board of Appeals*, 942 F.2d 281 (4th Cir. 1991), we held that the county's use of residency as a determining factor in awarding Passenger Vehicle Licenses, which were required for individuals to operate taxi services within the county, burdened nonresidents' rights under the Privileges and Immunities Clause. *Id.* at 282, 284.

In each instance cited above, the provision at issue directly prohibited, restricted, or otherwise regulated the ability of a nonresident to engage in a certain profession or trade within the state. Each such regulatory enactment was specifically directed at a commercial activity and differentiated between residents and nonresidents solely as to the conduct of that commercial activity. This fact fundamentally distinguishes the typical provision that implicates the Privileges and Immunities Clause in the context of a common calling from the statute at issue here.

The VFOIA does not regulate anyone's qualifications or prerequisites to enter into or engage in any profession or trade

within Virginia. It does not act as a wholesale barrier to entering a business, nor does it establish a license, fee, or other burden to nonresidents entering or engaging in a profession. On its face, it is clear the VFOIA addresses no business, profession, or trade. Simply put, there is something inherently and qualitatively different about the VFOIA as compared to any of the provisions considered by the Supreme Court in the context of the Privileges and Immunities Clause's right to pursue a common calling.

Indeed, no Supreme Court case or precedent within this Circuit has ever held that a statute whose purpose and language is unrelated to engaging in a particular profession, trade, or livelihood implicates the right to pursue one's common calling for purposes of the Privileges and Immunities Clause. Hurlbert nonetheless contends that because he is unable to file VFOIA requests on behalf of his clients while Virginia residents could do so for their clients, the VFOIA's citizens-only provision implicates nonresidents' (and specifically his own) right to pursue a common calling. At bottom, Hurlbert argues that even if the multiple thousands of VFOIA requests annually are unrelated to a common calling, the single instance of a tangential effect on him is sufficient to invalidate the VFOIA's citizens-only provision. We disagree.

While it may be true that VFOIA coincidentally limits a method by which Hurlbert conducts some of his business, it does not follow that the VFOIA impermissibly burdens his ability to pursue his common calling within the Commonwealth in a Privileges and Immunities Clause context. As the district court found, "[t]he statute's effect on Hurlbert's ability to practice his common calling is merely incidental." 780 F. Supp. 2d at 447. We agree.

Nothing in the language of the VFOIA prohibits Hurlbert from pursuing his profession in Virginia, or regulates his ability as a noncitizen to enter or engage in business there. Any effect on Hurlbert by the VFOIA is by happenstance; a cir-

cumstance never recognized by the Supreme Court in its Privileges and Immunities Clause case law. While the Supreme Court's jurisprudence recognizes that burdens short of a "wholesale restriction[ ]" fall within the right to pursue a common calling, no case has ever struck down a statute or regulation with such an indirect and tangential relationship to the practice of a trade or profession. *See Friedman v. Supreme Court of Va.*, 822 F.2d 423, 427 (4th Cir. 1987), *aff'd by Friedman*, 487 U.S. 59. Unlike the provision in *Friedman*, which restricted the method by which a noncitizen attorney could enter into the practice of law in the state, the VFOIA simply does not regulate Hurlbert's ability to enter into or pursue his trade or profession in Virginia. At most, the VFOIA limits one method by which Hurlbert may carry out his business and thus has an "incidental effect" on his common calling in Virginia. But the ease or method of carrying out one's work within a state is several steps removed from the right to work within the state on "terms of substantial equality" as residents in the first instance. *See Toomer*, 334 U.S. at 396. As such, we conclude the VFOIA does not implicate Hurlbert's right to pursue a common calling under the Privileges and Immunities Clause and the district court did not err in so holding.

### 2.   Other Claimed Privileges and Immunities Clause Rights

To support their contention that VFOIA infringes a protected right they enunciate as "equal access to information," the Appellants rely on the Third Circuit's decision in *Lee v. Minner*, 458 F.3d 194 (3d Cir. 2006). There, the Third Circuit held that Delaware's Freedom of Information Act violated the Privileges and Immunities Clause by limiting access to public records to Delaware citizens. *Id.* at 195. The court concluded that "[e]ffective advocacy and participation in the political process" requires "access to public records" and thus is an "'essential activity' which 'bear[s] upon the vitality of the Nation as a single entity.'" *Id.* at 200. The Appellants assert that VFOIA similarly burdens their ability to obtain public

records and "advocate for their interests on equal footing with Virginia citizens." (Opening Br. 23.)

Appellants' reliance on *Lee* is misplaced for at least two reasons. First, as out-of-circuit authority, it is not binding on this Court. Although the Third Circuit traced its analysis to general principles from Privileges and Immunities Clause jurisprudence, the specific right that *Lee* identified is not one previously recognized by the Supreme Court, or any other court, as an activity within the scope of the Privileges and Immunities Clause. Second, even were we to follow *Lee*'s rationale, that case is materially distinguishable from the situation presented by the Appellants. The right identified in *Lee* — "to engage in the political process with regard to matters of both national political and economic importance," *id.* at 199 — is not the same right the Appellants advance. By contrast, the Appellants want access to information of *personal* import rather than information to advance the interests of other citizens or the nation as a whole, or that is of political or economic importance. Thus, the "right" the Third Circuit identified in *Lee*, and the basis for concluding it implicates the Privileges and Immunities Clause, does not apply to the case at bar. The Appellants assert a generalized right to access information that reaches far more broadly than even *Lee* set forth. For these reasons, we find Appellants' argument that *Lee*'s rationale applies here unpersuasive.

To the extent Appellants urge us to adopt the position that there is a "broad right of access to information" stemming from the policy of open government undergirding freedom of information acts generally and grounded in "the First Amendment's guarantees of free speech and free press," we are similarly not persuaded. (*Cf.* Opening Br. 25.) While the Appellants may well be correct that access to public records is of "increasing importance . . . in the information age," that assertion misses the salient inquiry. (*See* Opening Br. 26 (citation omitted).)

The Supreme Court's Privileges and Immunities Clause jurisprudence simply does not lead to the conclusion Appellants advance. As the Supreme Court in *Baldwin* observed:

> It has not been suggested . . . that state citizenship or residency may never be used by a State to distinguish among persons. Suffrage, for example, always has been understood to be tied to an individual's identification with a particular State. No one would suggest that the Privileges and Immunities Clause requires a State to open its polls to a person who declines to assert that the State is the only one where he claims a right to vote. The same is true as to qualification for an elective office of the State. Nor must a State always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it to do so. Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those "privileges" and "immunities" bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.

436 U.S. at 383 (internal citations omitted). Access to a state's records simply does not "bear[ ] upon the vitality of the Nation as a single entity" such that VFOIA's citizen-only provision implicates the Privileges and Immunities Clause. *Cf. id.*

A sidebar to this argument is McBurney's assertion that the VFOIA burdens his "ability to advocate for his interests and the interests of others similarly situated." (Opening Br. 26.) McBurney claims on brief that the district court read his VFOIA request too narrowly and that because he sought documents regarding DCSE processing of child support cases

generally, and not just as related to his own case, he was not permitted to "take part in an interstate dialogue regarding state child support practices that directly affect his life and income, as well as the life and income of others." (Opening Br. 27.)

However, McBurney's complaint belies his assertion on appeal that he was attempting to advance an interest beyond his personal one. In the complaint, McBurney only asserted a Privileges and Immunities Clause claim on his own behalf, noting that without the information he sought, he cannot "participate in Virginia's governmental and political processes," "cannot advocate effectively on his own behalf, cannot invoke any of Virginia's dispute resolution procedures for dispute resolution, and cannot resolve the issues surrounding his child support application." (J.A. 15A-17A.) McBurney did not purport to be acting on behalf of others similarly situated, and only contended that the VFOIA limited his ability to advance *his own* interests. McBurney never argued before the district court that he sought to advance the interests of those "similarly situated."

McBurney's argument rests then on the assertion of a right "to advocate for his interests," a right that has not directly been recognized under the Privileges and Immunities Clause. To the extent McBurney's argument encompasses a general right of access to public records, that argument fails for the reasons set forth previously. To the extent it overlaps with a right to access to courts, that argument fails for the reasons set forth below. In addition, and contrary to McBurney's contention, the VFOIA's citizen's-only provision does not bar him from engaging in the political process, advocating his own interests, or advancing his political or legal arguments within the Commonwealth. For all of these reasons, we also reject McBurney's argument that VFOIA impermissibly restricts his ability to advocate his own and others' interests.

Appellants next contend that VFOIA implicates their "right of equal access to courts" because "VFOIA denies noncitizens

access to public records needed to prepare and file meaningful legal papers in suits against Virginia public officials." (Opening Br. 28.) However, what the Appellants invoke is something much different than any court access right previously recognized under the Privileges and Immunities Clause.

The Supreme Court has long held that the Privileges and Immunities Clause protects the right of a citizen of one state to access the courts of another state. *Canadian N. Railway Co. v. Eggen*, 252 U.S. 553, 560 (1920) (recognizing the "right of a citizen of one state . . . to institute and maintain actions of any kind in the courts of another") (internal quotation marks and citation omitted). Nothing in VFOIA directly or indirectly speaks to the Appellants' ability to file a proceeding in any court or otherwise enforce a legal right within Virginia. Access to courts has never been interpreted to mean that states must provide individuals with access to public records that may or may not lead to discovery of a potential legal claim. We decline to do so here. The Privileges and Immunities Clause is not a mechanism for pre-lawsuit discovery, and access to public records as part of the preparation for possible litigation is not "sufficiently basic to the livelihood of the Nation" so as to fall within the protection of the Privileges and Immunities Clause. *Cf. Friedman*, 487 U.S. at 65.

Citing *Pruitt*, the Appellants also assert that VFOIA infringes on their "ability to pursue their economic interests on equal footing with Virginia residents." (Opening Br. 29.) But *Pruitt* is a common calling case and does not set forth some novel generic right to pursue "economic interests" under the Privileges and Immunities Clause. 4 F.3d at 266. Appellants' arguments related to a right to pursue economic interests largely mirror the arguments they make with regard to other rights — for McBurney, the ability to access courts on equal footing as Virginia citizens, and for Hurlbert, the right to pursue a common calling. We find no support in the relevant case law to identify a new right to pursue economic

interests within the ambit of the Privileges and Immunities Clause. Accordingly, this argument also fails.

For the foregoing reasons, we conclude the district court did not err in concluding that the VFOIA does not infringe on any of the Appellants' fundamental rights or privileges protected by the Privileges and Immunities Clause. Accordingly, we need not address the parties' arguments regarding the rest of the Supreme Court's test for whether a provision violates the Clause. Having failed to satisfy the first part of that test, Appellants' claim that the VFOIA violates the Privileges and Immunities Clause cannot succeed as a matter of law.

### B.   Dormant Commerce Clause

Hurlbert lastly contends the district court erred in concluding the citizens-only provision of VFOIA does not violate the dormant Commerce Clause. Dormant Commerce Clause jurisprudence arises as a "negative implication" of the Constitution's Commerce Clause, U.S. Const. art. I, § 8, cl. 3, which empowers Congress "[t]o regulate Commerce . . . among the several States." *See Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (quoting U.S. Const. art. I, § 8, cl. 3). The dormant Commerce Clause restrains "the several States" by limiting "the power of the States to erect barriers against interstate trade." *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (internal quotation marks omitted). And it "is driven by concern about economic protectionism—that is, regulatory measures *designed* to benefit in-state economic interests by burdening out-of-state competitors." *Davis*, 553 U.S. at 337-38 (internal quotation marks omitted) (emphasis added).

There are two "tiers" in analyzing dormant Commerce Clause claims, depending on the type of burden at issue. The first tier applies "where a state law discriminates facially, in its practical effect, or in its purpose" against interstate commerce. *Envtl Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996). Under such first tier review, "'discrimination'

simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). The principle is grounded in the belief that "[t]he mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States" and it prohibits states from "enact[-ing] laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses." *Granholm v. Heald*, 544 U.S. 460, 472 (2005). "Unless discrimination is demonstrably justified by a factor unrelated to economic protectionism, a 'discriminatory law is virtually *per se* invalid.'" *Brown v. Hovatter*, 561 F.3d 357, 363 (4th Cir. 2009) (quoting *Davis*, 553 U.S. at 338).

The second tier of dormant Commerce Clause analysis is commonly called the *Pike* test. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Used in the absence of "discrimination for the forbidden purpose," the *Pike* analysis requires courts to consider "whether the state law[ ] unjustifiably . . . burden[s] the interstate flow of articles of commerce." *Brown*, 561 F.3d at 363 (quotation marks and citation omitted). In second tier analysis, the regulatory measure at issue is not scrutinized as strictly as under the first method and "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* at 363 (quoting *Pike*, 397 U.S. at 142).

Hurlbert asserts that the district court erred in applying the second tier analysis instead of first tier analysis, and that under the first tier analysis, VFOIA violates the dormant Commerce Clause. Hurlbert contends VFOIA is per se unconstitutional under first tier analysis because it facially discriminates by "expressly guarantee[ing] access to public records only to Virginia citizens and authoriz[ing] the state to bar noncitizens." (Opening Br. 38.) At the very least, he asserts, VFOIA discriminates in effect because it "den[ies] access to records to noncitizens who seek to use public records for

commercial purposes while allowing unfettered access to in-
state requestors with similar economic interests." (Opening
Br. 38-39.)

Hurlbert's argument fails because it is not enough that a
statute discriminates on the basis of citizenship for it to offend
dormant Commerce Clause principles. Rather, the challenged
statute must discriminate "against interstate commerce" or
"out-of-state economic interests." *Cf. United Haulers Ass'n*,
550 U.S. at 338.**[4]** Although the VFOIA discriminates against
noncitizens of Virginia, it does not discriminate "against inter-
state commerce" or "out-of-state economic interests." The
object of the VFOIA is to provide a mechanism for access and
copying of public records to Virginia citizens to reflect that
"[t]he affairs of government are not . . . conducted in an atmo-
sphere of secrecy . . . ." Va. Code Ann. § 2.2-3700(B), para.
1. The VFOIA is wholly silent as to commerce or economic
interests, both in and out of Virginia. Therefore, the VFOIA
does not facially, or in its effect, discriminate against inter-
state commerce or out-of-state economic interests.

Any effect on commerce is incidental and unrelated to the

---

**[4]**As we have previously noted, "[t]he clearest example of a state law that
violates the Dormant Commerce Clause is one that *facially discriminates
against interstate commerce, such as a protective tariff or customs duty.*
Even a facially neutral state law, however, violates the Dormant Com-
merce Clause *'when its effect is to favor instate economic interests over
out-of-state interests.'*" *DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 122 (4th
Cir. 2008) (emphases added); *see also Camps Newfound/Owatonna, Inc.
v. Town of Harrison, Me.*, 520 U.S. 564, 575-76 (1997) ("It is not neces-
sary to look beyond the text of this statute to determine that it discrimi-
nates against interstate commerce. The Maine law expressly distinguishes
between entities that serve a principally interstate clientele and those that
primarily serve an intrastate market, singling out camps that serve mostly
in-staters for beneficial tax treatment, and penalizing those camps that do
a principally interstate business. As a practical matter, the statute encour-
ages affected entities to limit their out-of-state clientele, and penalizes the
principally nonresident customers of businesses catering to a primarily
interstate market.").

actual language of VFOIA or its citizens-only provision. As we have previously observed:

> The dormant Commerce Clause is implicated by burdens placed *on the flow of interstate commerce*—the flow of goods, materials, and other articles of commerce across state lines. And it is a trade barrier to the free flow of goods, materials, and other articles of commerce across state lines that violates the dormant Commerce Clause. *The Clause does not purport to . . . protect the participants in intrastate or interstate markets, nor the participants' chosen way of doing business.*

*Brown*, 561 F.3d at 364 (internal citations omitted) (second emphasis added). Nothing in VFOIA burdens "the flow of interstate commerce." At most, it prevents Hurlbert from using his "chosen way of doing business," but it does not prevent him from engaging in business in the Commonwealth. The VFOIA simply does not fall within the type of provision to which the first tier test of analyzing dormant Commerce Clause claims applies. Hurlbert's argument that the district court erred in applying the second tier, rather than first tier, analysis thus fails.

Significantly, Hurlbert's opening brief does not challenge the district court's application of the second tier analysis. It only contends that the "district court erred by not applying rigorous scrutiny to VFOIA's citizens-only provision and instead applying the *Pike* balancing analysis reserved for evenhanded statutes." (Opening Br. 40.) Having rejected the challenge Hurlbert makes to the district court's analysis, we need not go beyond it to consider how the court undertook the *Pike* analysis because Hurlbert has waived any challenge to that component of the district court's analysis by not raising it in his opening brief. *See* Fed. R. App. P. 28(a)(9)(A) (stating that an appellant's opening brief must contain the "appellant's contentions and the reasons for them"); *IGEN Int'l, Inc.*

*v. Roche Diagnostics GMBH*, 335 F.3d 303, 308 (4th Cir. 2003). The district court therefore did not err in rejecting Hurlbert's dormant Commerce Clause claim.

## III.

For the reasons set forth above, we affirm the district court's judgment.

*AFFIRMED*