THACKER, Circuit Judge,
dissenting:
“When law enforcement officers rely on precedent to resolve legal questions as to which '[Reasonable minds ... may differ,’ the exclusionary rule is well-tailored to hold them accountable for their mistakes.” United States v. Davis, 598 F.3d 1259, 1267 (11th Cir.2010), aff'd, - U.S. -, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (quoting United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Clearly then, the exclusionary rule is well-tailored to hold accountable the law enforcement officers in this case who relied on non-binding, non-precedential authority regarding emerging technology— without first bothering to seek legal guidance — in order to conduct a warrantless search which spanned a period of nearly two months.
Therefore, with all due respect to my colleagues in the majority, I dissent.
I.
In this case, federal and state law enforcement officers conducted surveillance to track the whereabouts of Appellant’s vehicle via the installation of a global positioning system (“GPS”) device; The officers used a battery operated GPS device affixed to the undercarriage of Appellant’s vehicle to track his movements 24 hours a day, resulting in a catalog of data detailing the vehicle’s location for nearly two months from March 20 to April 12, 2011, and again from May 13 to May 16, 2011.
They did so without obtaining a search warrant, despite the fact that no urgent or exigent circumstance existed. Indeed, in the words of one of the officers, “the investigation was taking too long,” and officers “were spending too much time dragging it out.” J.A.374.[1]
They did so without consulting the United States Attorney’s Office regarding the legality of such a search, despite the fact that there was no binding appellate precedent authorizing their actions, and there was clear indication that the law in this regard was not settled, but rather, in a state of flux.
Eight months later, the Supreme Court ruled such conduct to be in violation of the Fourth Amendment. On January 23, 2012, the Supreme Court ruled that the Government’s installation of a GPS device on the undercarriage of a target’s vehicle while it was parked in a public parking lot, “and its use of that device to monitor the *340 vehicle’s movements, constitute^] a search” under the Fourth Amendment. United States v. Jones, — U.S. -, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012) (internal quotation marks omitted). In light of the Jones decision, the district court invited Appellant to file a motion for reconsideration of his motion to suppress, which the district court had initially denied. Ultimately, the district court ruled that, per Jones, the use of the GPS tracking device in this case was illegal, but the officers acted in good faith, and the purpose of the exclusionary rule would not be advanced if the evidence were to be suppressed.[2]
II.
It is a fundamental tenet of the Fourth Amendment that warrantless searches are per se unreasonable, “subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The text of the Fourth Amendment provides protection from unreasonable searches and seizures of “persons, houses, papers, and effects.” U.S. Cont. amend. IV. As the Supreme Court recognized, “[t]he text of the Fourth Amendment reflects its close connection to property.” United States v. Jones, — U.S. -, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012).
Although the Fourth Amendment protects the right to be free from unreasonable searches and seizures, it “is silent about how this right is to be enforced. To supplement the bare text, [the Supreme] Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation.” Davis v. United States, — U.S. ——, 131 S.Ct. 2419, 2423, 180 L.Ed.2d 285 (2011). The Court has repeatedly held that the exclusionary rule’s sole purpose “is to deter future Fourth Amendment violations.” Id. at 2426. Exclusion of evidence collected by unconstitutional means is “not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search.” Id. (internal quotation marks omitted). Rather, it is designed to safeguard the continued vitality of the Fourth Amendment.
The deterrent function of the exclusionary rule necessarily requires us to consider the “culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.” Davis, 131 S.Ct. at 2427 (internal quotation marks and citations omitted). Therefore, “[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).
Based on this rationale, the Supreme Court created a “good faith” exception to the exclusionary rule, which applies when law enforcement officers “act with an objectively ‘reasonable good-faith belief that *341 their conduct is lawful.” Davis, 131 S.Ct. at 2427 (quoting United States v. Leon, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The Court has applied the good faith exception to evidence obtained by law enforcement officers who acted in objectively reasonable reliance upon a search warrant issued by a neutral magistrate, but where the warrant was ultimately found to be unsupported by probable cause. See Leon, 468 U.S. at 909, 104 S.Ct. 3430. The Court also applied this exception when officers acted in objective reliance upon a state statute ultimately found to violate the Fourth Amendment. See Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). And in Davis, the Court further articulated this exception applies “when the police conduct a search in objectively reasonable reliance on binding appellate precedent.” 131 S.Ct. at 2427. None of these factual scenarios are present here.
In Davis, the Court ruled this exception applies, “when the police conduct a search in objectively reasonable reliance on binding appellate precedent.” Davis, 131 S.Ct. at 2434 (emphasis supplied). In further explaining this holding, the Court stated, “when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities.” Id. at 2429 (emphasis in original). Thus, Davis carves out a very specific and narrow articulation of circumstances in which the good faith exception to the exclusionary rule applies: when officers conduct a search in objectively reasonable reliance on binding appellate precedent specifically authorizing their conduct. See id. Davis did not, however, answer “the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled.” Id. at 2435 (Sotomayor, J., concurring).
When presented with the question below as to whether the good faith exception applied in the circumstance presented by this case, the district court denied Appellant’s motion to suppress determining that “the purposes of the [exclusionary [r]ule would just not be achieved in any way whatsoever if suppression was ordered.” J.A. 479. The district court determined that the conduct of the law enforcement officers was in good faith and “passes muster.” Id. In so concluding, the district court relied on United States v. Michael, 645 F.2d 252, 257 (5th Cir.1981) (en banc), and Krull, 480 U.S. 340, 107 S.Ct. 1160, as proof that the law surrounding the noncon-sensual, warrantless installation of an electronic tracking device was settled before Jones, 132 S.Ct. 945.
In Michael, the Fifth Circuit held that the nonconsensual, warrantless installation of a beeper on the defendant’s van did not violate the Fourth Amendment even if it was a search. 645 F.2d at 256. In Krull, officers conducted a warrantless search of an automobile wrecking yard pursuant to a state statute authorizing warrantless administrative searches of those licensed to sell motor vehicles or automotive parts. 480 U.S. at 343, 107 S.Ct. 1160. The Supreme Court held that the exclusionary rule did not apply to the evidence obtained by the search because the officers acted in objectively reasonable reliance upon the state statute, even though that statute was subsequently found to violate the Fourth Amendment. Id. at 342, 107 S.Ct. 1160. In relying on these two cases, the district court determined that beepers and GPS devices were one and the same for purposes of Fourth Amendment analysis.[3] *342 Therefore, the district court concluded that the law was settled and that investigators acted in good faith relying on this settled law “when the beeper was placed on the bumper.” J.A. 479. There are three reasons, recognized in Davis, that this analysis is flawed: (1) at the time the warrantless search was conducted in this case, no “binding appellate precedent” existed in this circuit “specifically author-iz[ing]” law enforcement’s actions, 131 S.Ct. at 2429, 2434; (2) the law in general regarding the warrantless use of GPS devices was not settled, but was, in fact, in a state of flux; and (3) law enforcement officers did not act in an “objectively reasonable” manner, id. at 2429 (quoting Leon, 468 U.S. at 919, 104 S.Ct. 3405).
A.
At the time the warrantless search was conducted in this case, no “binding appellate precedent” existed in this circuit “specifically authoriz[ing]” law enforcement’s actions, Davis, 131 S.Ct. at 2429, 2434. The words “binding appellate precedent” should be given their plain meaning. Id. at 2434. Binding appellate precedent in this circuit means the published opinidns of this court and the United States Supreme Court. See, e.g., McBumey v. Young, 667 F.3d 454, 465 (4th Cir.2012) (“Appellants’ reliance on [a Third Circuit opinion] is misplaced for at least two reasons. First, as out-of-circuit authority, it is not binding on this Court.”); Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir.1996) (“[Unpublished opinions are not even regarded as binding precedent in our circuit.... ” (citing Local Rule 36(c))). Simply put, opinions of other circuit courts of appeal in general and of the Fifth Circuit Court of Appeals in particular — such as Michael, 645 F.2d 252, upon which the district court relied — are not binding precedent in the Fourth Circuit.
Indeed, it is uncontroverted that at the time the warrantless search in this case was conducted, the two appellate courts that bind the District Court of Maryland— this court and the Supreme Court — had no precedent specifically authorizing the war-rantless use of a GPS device to track a suspect’s vehicle or even authorizing the warrantless, nonconsensual installation of a beeper tracking device on a suspect’s vehicle.[4] The majority attempts to fill the void left by this absence of binding precedent by describing instead what it calls a “significant body of federal law” and precedent from the Court of Special Appeals of Maryland and the Maryland Court of Appeals supporting the warrantless attachment of a GPS to a vehicle. Ante at 333-34. But the majority fails to cite any *343 binding appellate precedent specifically authorizing the conduct as required by Davis. The majority focuses instead on United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). However, reliance on these cases here is misplaced. As discussed below, in both cases, Knotts and Karo, the beeper was placed in a container with the consent of the then-owner, not attached to the undercarriage of the suspect’s vehicle without knowledge or consent of the vehicle’s owner. Clearly, these cases do not “specifically authorize[]” the nonconsensual, warrantless installation of a GPS device on a suspect’s vehicle. Davis, 131 S.Ct. at 2429.
The majority also quotes our decision in United States v. Jones, 31 F.3d 1304 (4th Cir.1994), for the proposition that we interpreted Knotts and Karo to exclude the use of a beeper tracking device from “the ambit of the Fourth Amendment” unless “it reveals a critical fact about the interior of premises that could not have been obtained through visual surveillance.” Ante at 333 (quoting Jones, 31 F.3d at 1310 (internal quotation marks omitted)). However, reliance on this case is also misplaced. In Jones, we were asked to determine “whether the postal inspectors’ use of an electronic tracking device to monitor the contents of Jones’ van constituted a search forbidden by the Fourth Amendment.” Id. at 1309. Relying on Knotts and Karo, we concluded it - was not a search because, as in the Supreme Court cases, the beeper tracking device
was not planted in the van; it was concealed in a mail pouch which belonged to the [Gjovernment and in which Jones had no expectation of privacy whatsoever. The mail pouch with the beeper found its way into Jones’ van only because Jones stole the pouch and hid it in the van himself.
Id. at 1310. We made sure to illustrate that the facts in Jones did not “raise[ ] the disturbing specter of [Government agents hiding electronic devices in all sorts of personal property and then following private citizens who own such property as they go about their business,” as does the case before us now. Id. at 1311. There was no such danger in Jones, because “the [Government ha[d] placed the electronic device in its own property,” and “[o]nly purloiners of such property need fear adverse consequences.” Id.
Indeed, the Supreme Court’s discussion in Jones, 132 S.Ct. 945, of its own beeper cases forecloses the possibility that these cases support the warrantless GPS search in the case at hand. In Jones, the Court identified a critical distinction between its precedent regarding the use of beepers and the case before the Court, which, as here, involved the nonconsensual, warrant-less installation of a GPS device on the suspect’s vehicle. Id. at 951-52. The Supreme Court observed that in its prior beeper cases, the beepers in question had initially been placed in containers with the consent of the then-owner, and the containers later came into the defendant’s possession. See id. (discussing Knotts, 460 U.S. 276, 103 S.Ct. 1081, and Karo, 468 U.S. 705, 104 S.Ct. 3296); see also United States v. Brown, 744 F.3d 474, 478 (7th Cir.2014) (deciding the good faith exception applied to the warrantless installation of a GPS device on a vehicle “[bjecause the GPS unit that played a role -in the gathering of evidence against Brown was installed with the consent of the Jeep’s owner, Knotts and Karo are ‘binding appellate precedent’ ”). Thus, the Supreme Court described the defendant in Jones as being “on much different footing” than the Knotts and Karo defendants because he actually possessed the vehicle at the time the Government installed the GPS tracker, *344 and he had not consented to its installation. 132 S.Ct. at 952. That is precisely the case here.
B.
The Government also argues that the law regarding GPS searches was generally settled before the Supreme Court issued its opinion, and therefore, the main purpose of the exclusionary rule — to deter future Fourth Amendment violations— would not be met. According to the Government, “[p]rior to the installation of the GPS tracking devices in this case, the vast majority of decisions had upheld the use of GPS tracking devices without a warrant.” Appellee’s Br. 29.
First and foremost, Davis sets a higher bar than a simple survey of an amorphous “vast majority of decisions.” Appellee’s Br. 29. Rather, objectively reasonable reliance on binding appellate precedent specifically authorizing the conduct at issue is the gauge. Beyond this basic premise, the Supreme Court’s decision in Jones further undermines the Government’s argument. The officers in Jones — standing on the same pre-Jones legal footing on which the officers in this case stood — felt compelled to obtain a search warrant in order to attach a GPS device to the target’s vehicle. See 132 S.Ct. at 948. In 2005, the officers in Jones, participating in a joint FBI and Metropolitan Police Department Task Force, applied for and received a warrant from the United States District Court for the District of Columbia authorizing the installation of a GPS device on a suspect’s vehicle in the District of Columbia within ten days of the warrant’s issue. Id. However, they installed the GPS device outside the restrictions found in the warrant inasmuch as they installed the GPS device on the 11th day and in Maryland, rather than in the District of Columbia. Id. The fact that pre-Jones other officers — located right next door to the officers in this case no less — would feel the need to secure a warrant before installing and using a GPS device on a suspect’s vehicle certainly casts further doubt on the Government’s argument that an officer similarly positioned to the officers here would have reasonably thought the warrantless search in this case was permissive under binding appellate precedent.
To be sure, the Government correctly asserts the main purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to remedy past ones. But, it does not then follow that the district court correctly found there was no police misconduct in this case to be deterred because they acted in conformity with legal norms that were, at the time, “widely accepted.” Appellee’s Br. 12. Mere conformity with widely accepted legal norms is not the standard, nor should it be. Reliance on past practice in general in order to invade the province of the Fourth Amendment without a firm legal basis is not conscientious police work and is, at minimum, reckless.
Because no such binding authority existed in this circuit at the time of the execution of the warrantless search in this case, I conclude that the good faith exception as articulated in Davis is unsuitable here.[5] *345 Thus, I next turn to whether the good faith exception can apply at all to the factual circumstances of this case — in other words, whether law enforcement acted in an objectively reasonable manner. Critical to this analysis is the fact that, contrary to the Government’s assertion, the law in this area was not generally accepted or “widely accepted,” but, rather, was in a state of flux; so much so that the Supreme Court had accepted the issue for consideration.
C.
Law enforcement officers in this case did not act in an “objectively reasonable” manner, Davis at 2429 (quoting Leon, 468 U.S. at 919, 104 S.Ct. 3405). The good faith exception at its core requires officers to “act with an objectively ‘reasonable good-faith belief that their conduct is lawful.” Davis, 131 S.Ct. at 2427 (quoting Leon, 468 U.S. at 909, 104 S.Ct. 3405). The Supreme Court has recognized, “[responsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules.” Id. at 2429 (internal quotation marks omitted). I conclude that, here, the officers could not have had an objectively reasonable belief that their conduct was lawful for several reasons.
First, at the time the warrantless search was conducted in this case, the District of Columbia Circuit, neighboring the District of Maryland where the war-rantless search here occurred, had determined that a warrantless GPS search violated the Fourth Amendment. See United States v. Maynard, 615 F.3d 544, 549 (D.C.Cir.2010), aff'd in part sub nom. United States v. Jones, — U.S. -, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). In fact, at the time the warrantless search was conducted in this case, Maynard had been accepted for argument before the Supreme Court, further undercutting the Government’s position here that the issue was generally settled. Additionally, the Maynard case illustrates that as early as 2005, similarly situated officers were obtaining warrants for GPS searches such as the one performed in this case. Nonetheless, officers in this case did not “take care to learn” what was required of them by Fourth Amendment precedent under these circumstances. Davis, 131 S.Ct. at 2429.
Quite the contrary. Detective Geare testified that he did not seek advice from any legal authority regarding the constitutionality of such a search, even though there was no exigent circumstance preventing him from doing so. Appellant’s counsel questioned Detective Geare,
Q At any point did you call the U.S. Attorney’s Office and say, hey, I’m thinking about putting a GPS device on a vehicle without a warrant, should I get one, you never did that, did you?
A No, not to my recollection.
Q The U.S. Attorney they were available to you, correct?
A Sure.
Q The person you would talk to if you had legal questions was the U.S. Attorney, correct?
A Correct.
Q And you didn’t call them in reference to this issue?
A Correct.
*346 J.A. 422. Instead, Detective Geare testified that in utilizing the GPS device in this case, he relied simply on his own past conduct using GPS devices in prior cases that had resulted in convictions. Detective Geare testified that it was his “understanding” that a warrant was not required when attaching a GPS device on a target’s vehicle, and his “belief’ that as long as the vehicle was in a public area attaching a GPS device “was fine.” J.A. 365. He certainly did not receive such guidance from the United States Attorney’s Office because, per his own testimony, he did not bother to ask.
Because law enforcement officers acted with reckless disregard for Appellant’s Fourth Amendment rights and failed to act reasonably to “learn what was required of them” under the Fourth Amendment before conducting a warrantless search via the use of a GPS tracking device to monitor Appellant’s every movement in his vehicle for a period spanning nearly two months, I cannot conclude that they acted with an objectively reasonable good faith belief that the warrantless GPS search was lawful. Davis, 131 S.Ct.at 2429.
III.
In light of this era of fast-moving technological advancements and our ever-shrinking zone of privacy, see Riley v. California, — U.S. -, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (holding officers must obtain a warrant before searching a cell phone seized incident to an arrest),[6] law enforcement officers should be deterred from undertaking warrantless searches in situations where, as here, there was no binding appellate precedent authorizing the action, there was no exigent circumstance, and the state of the law was unsettled. The Government must err on the side of the Constitution and obtain a warrant especially as “the disturbing specter of [Government agents hiding electronic devices in all sorts of personal property and then following private citizens who own such property as they go about their business” becomes ever more possible. United States v. Jones, 31 F.3d 1304, 1311 (4th Cir.1994). In the words of the Seventh Circuit, I “reject the [Gjovernment’s invitation to allow police officers to rely on a diffuse notion of the weight of authority around the country, especially where that amorphous opinion turns out to be incorrect in the Supreme Court’s eyes.” United States v. Martin, 712 F.3d 1080, 1082 (7th Cir.2013) (per curiam).
I would- reverse the judgment of the district court.

. Citations to the “J.A.” refer to the Joint Appendix filed by the parties in this appeal.

. The Government conceded below the illegality of the search. J.A. 450-51 ("THE COURT: And the use of the GPS was illegal. [GOVERNMENT COUNSEL]: And, yes, that is correct. That’s what the Supreme Court has said.”). Curiously, the Government now attempts to reverse course before us and argue that a warrant was not needed for the search because the officers had a reasonable suspicion Appellant was engaged in illegal activity. Appellee’s Br. 23 ("Installation and use of a slap-on GPS tracking device is such a limited intrusion that it should be justified based upon reasonable suspicion.”).

. Specifically, when discussing the use of a GPS device versus a beeper, the district court *342 stated that GPS monitoring "isn't a new technology. This is old technology. It’s 20, 30, 40 years that police officers have been using beepers, transponders, whatever you want to call them, and following them around. And it's not a subject that the [cjourts haven’t previously addressed.” J.A. 470. As discussed more fully below, beepers and GPS devices are not one and the same. Moreover, Krull, 480 U.S. 340, 107 S.Ct. 1160, did not involve the use of a beeper at all, let alone a GPS device.

. Even if such a case existed relative to beeper tracking devices, I am doubtful installation of a beeper would also “specifically authorize[]” installation of a GPS device. Davis, 131 S.Ct. at 2429. The two are of an entirely different character. A beeper tracking device requires law enforcement to at least be in proximity to the device to receive the transmitted signal, whereas a GPS device downloads location data at specific time intervals with no proximity needed. See, e.g., Jones, 132 S.Ct. at 963-64 (Sotomayor, J., concurring) (discussing the differences between surveillance using a GPS device and a beeper). In other words, with the use of a GPS device, law enforcement may simply download the data from afar at their leisure, as they did in this case.

. See also, United States v. Martin, 712 F.3d 1080 (7th Cir.2013) (per curiam). Although the Seventh Circuit decided the case on other grounds, it stated that the district court's reliance on Davis was "an unwarranted expansion of the Supreme Court's decision” because "[a]s Justice Sotomayor pointed out in her opinion concurring in the judgment, Davis 'd[id] not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled.’ ” Martin, 712 F.3d at 1082 (quoting Davis, 131 S.Ct. at 2435 (Sotomayor, J., concurring)). *345 The court emphasized that the good faith exception as pronounced in Davis applies "only to 'a search [conducted] in objectively reasonable reliance on binding appellate precedent.' ” Id. (quoting Davis, 131 S.Ct. at 2434) (emphasis in original).

. In Riley, the Supreme Court recognized that cell phones, a relatively new technology "inconceivable just a few decades ago,” "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.” 134 S.Ct. at 2484. The Court further stated, "[t]he fact that technology now allows an individual to carry [private] information in his hand does not make the information any less worthy of the protection for which the Founders fought.” Id. at 2495. The Court recognized that its decision "will have an impact on the ability of law enforcement to combat crime;” however, it also emphasized that “[p]rivacy comes at a cost.” /d.at 2493.