**Sean J. O'REILLY, Plaintiff–Appellant,**

v.

**BOARD OF APPEALS FOR MONTGOMERY COUNTY, MARYLAND, Defendant–Appellee.**

No. 90–1895.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1991.

Decided Aug. 13, 1991.

Edwin Vieira, Jr., Independent Hill, Va., for plaintiff-appellant.

Karen Federman Henry, Associate County Atty., argued (Joyce R. Stern, County Atty., Linda B. Thall, Sr. Asst. County Atty., on brief), Rockville, Md., for defendant-appellee.

Before HALL, MURNAGHAN and WILKINS, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Sean J. O'Reilly brought this action, pursuant to 42 U.S.C.A. § 1983 (West 1981), claiming that in denying him a Passenger Vehicle License (PVL) the County Board of Appeals for Montgomery County, Maryland (the Board) violated rights guaranteed to him under the commerce clause and the privileges and immunities clause of the United States Constitution. On remand from a prior appeal to this court, the district court granted summary judgment in favor of the Board. We reverse and remand.

### I.

O'Reilly sought one of a limited number of available PVLs that would have permitted him to provide taxi service originating in Montgomery County. The Montgomery County Department of Transportation granted O'Reilly a PVL, but other applicants who were denied a PVL by the Department appealed to the Board. Once an appeal was taken by a disgruntled applicant, the Board was required to consider de novo all applicants, including O'Reilly, and decide who would receive the PVLs. The qualifications of applicants for PVLs were to be judged according to seven factors:

1) Financial responsibility of the applicant.

2) Ability to provide call-response service.

3) Familiarity with the geographical area to be served.

4) Familiarity with County taxicab regulations.

5) Standards for issuance of PVLs under Montgomery County Code Section 53–45.

6) Hiring policy for taxicab drivers of corporate or non driver owner applicants as regards items 3, 4 and 5.

7) Other factors required to be considered by Montgomery County Code Section 53–46(c).

Montgomery County, Md., Exec.Reg. No. 10–77 (May 20, 1977). The order of the Board awarding the PVLs explained how it determined familiarity:

As for familiarity with the geographical area to be served, it appears to us that individuals who have experience as taxi cab drivers in Montgomery County *or* who are long-time residents of Montgomery County clearly have greater familiarity than individuals who live and work elsewhere.

(Emphasis added.)

In its order the Board found all of the applicants for the PVLs to be qualified under these criteria, but because the number of qualified applicants exceeded the number of available PVLs, the Board proceeded to rank the applicants in order to determine which applicants would receive PVLs. The Board disclosed its reasons for ranking those who received a PVL over those who did not, stating:

The eighteen individuals we have selected all answered affirmatively with response [sic] to the knowledge of regulations, standards for issuance of PVLs and access to the required insurance. These individuals provided a combination of financial responsibility, ability to provide call response, and knowledge of Montgomery County (as reflected by residence and taxicab driving experience), which combined with the clear incentive of the owner-driver ... to provide competent and efficient service, made these applications rank above the rest.

The Board denied O'Reilly a PVL. Each applicant who received a PVL was a resident of Maryland—with the exception of two, all were residents of Montgomery County. The record is abundantly clear that O'Reilly, a resident of Virginia, possessed all the qualifications needed to obtain a PVL and had more experience driving a taxi in Montgomery County than five of the applicants who were awarded PVLs.

O'Reilly appealed unsuccessfully his denial of a PVL to the Maryland Circuit Court. He then filed this action in federal district court claiming that the Board violated the commerce clause and privileges

and immunities clause by impermissibly relying on Maryland residence to determine familiarity with the geographic region to be served. The district court found that the Maryland Circuit Court order collaterally estopped O'Reilly from contending that the Board relied on Maryland residency in making its selection because the circuit court order found that residence "was a factor considered only insofar as it related to familiarity, with no preference, per se, given to Montgomery County residents over non-resident applicants." On appeal, this court reversed and remanded, finding that the state court did not consider whether the Board "found that residence was or was not the controlling factor in determining familiarity or whether the consideration of residence in determining familiarity was unconstitutional." *O'Reilly v. County Bd. of Appeals for Montgomery County, Md.*, 900 F.2d 789, 792 (4th Cir.1990).

On remand, O'Reilly attempted to pursue discovery on whether residency was a controlling factor in the Board decision. When the Board opposed O'Reilly's attempts, the district court halted discovery on this issue.[1] Both parties then moved for summary judgment. O'Reilly offered a number of affidavits from owners and long-time employees of taxi companies stating their belief that residence in Montgomery County would not give someone the type of familiarity with the area necessary to provide efficient taxi service. O'Reilly also presented affidavits demonstrating that neighboring Prince George's County, Maryland and the District of Columbia determined geographic familiarity by administering a written test to applicants. The Board offered no evidence to contradict the affidavits presented by O'Reilly. Thus, the only evidence before the district court was that residency is not indicative of the familiarity with the geographic area needed by taxicab drivers. Further, the Board offered no evidence that the method used by similar jurisdictions to ascertain an applicant's familiarity with the geographic area to be served was not a viable alternative to determining an applicant's familiarity.

The district court granted summary judgment in favor of the Board, concluding that residency was not the controlling factor in determining familiarity because the "facts reveal ... that *all* of the ultimate recipients of the PVLs had at least one and one-half years of actual taxicab driving experience in Montgomery County, and, therefore, the Board clearly did not rely on *mere* residence in awarding even one PVL." (Emphasis in original) (footnote omitted). The district court reasoned that since all of the PVL applicants were qualified,

> the only basis for plaintiff's § 1983 claim could be that the Board *per se* preferred Maryland residents over non residents. The Circuit Court, however, found specifically that no preference, *per se*, was given to residents over non resident applicants. As explained in this Court's February 9, 1989 Memorandum and Order, preclusive effect must be given to this determination.

Having concluded that residence was not the controlling factor utilized by the Board in determining familiarity, the district court found that it need not address the constitutional issues.

## II.

■ Section 1983 provides that persons acting under color of state law who deprive a citizen of the United States "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C.A. § 1983. A violation of the privileges and immunities clause can give rise to a cause of action under section 1983. *See Friedman v. Supreme Court of Va.*, 822 F.2d 423 (4th Cir.1987), *aff'd*, 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988); *see also Dennis v. Higgins*, — U.S. ——, 111 S.Ct. 865, 875, 112 L.Ed.2d 969 (1991) (Kennedy, J., dissenting) (framers intended section 1983 to protect rights secured by the privileges and immunities clause).

■ The district court began and ended its analysis with a finding that residency

1. O'Reilly has not appealed this ruling.

was not the controlling factor in the determination of the Board. We disagree. The sole factor on which differentiation could be made among the applicants on the basis of information before the Board was the applicant's familiarity with the geographic area to be served because the remaining factors were not susceptible to quantification. The Board conceded at oral argument, and its order demonstrates, that it considered residency in Montgomery County, along with experience, as indicators of familiarity with the geographic area to be served.

The Board argues, however, that "mere residency" was not determinative of familiarity; rather, it contends that it considered the combination of residency plus experience in determining which applicants were most familiar with Montgomery County. However, a fact the Board is unable to dispute or explain is that at least five of the applicants clearly had less experience driving a taxi in Montgomery County than did O'Reilly yet were awarded PVLs. It is undisputed that O'Reilly was equally qualified with these five with respect to all factors other than the familiarity factor and had more experience driving a taxi in Montgomery County. Thus, we are led to the inescapable conclusion that the Board ultimately rested its determination of which applicants were the most familiar with the geographic area to be served on the applicant's residency.

Because residency was considered by the Board, constitutional concerns are implicated. Although the district court failed to address the constitutional issues, we conclude that another remand for this purpose would be an unnecessary waste of judicial and litigant resources. We further conclude that it would be appropriate for us to address the legal questions presented.

**2.** As a preliminary matter, the Board also argues that its application of the regulation does not violate the privileges and immunities clause because out-of-state residents are not burdened to any greater extent than in-state residents who did not live in Montgomery County. This argument lacks merit. *United Bldg. & Constr. Trades Council v. Mayor and Council of Camden,* 465

### III.

The privileges and immunities clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art IV, § 2, cl. 1. This clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948). Citizenship is synonymous with residency for the purpose of analyzing this clause. *Supreme Court of Va. v. Friedman,* 487 U.S. 59, 64, 108 S.Ct. 2260, 2264, 101 L.Ed.2d 56 (1988).[2] In order to determine whether a distinction based on residency impermissibly offends the privileges and immunities clause, we must undertake a two-step analysis. *Friedman,* 487 U.S. at 64, 108 S.Ct. at 2264. First, we must consider whether the privilege affected is " 'sufficiently basic to the livelihood of the Nation' as to fall within the purview of the Privileges and Immunities Clause." *United Bldg. & Constr. Trades Council,* 465 U.S. at 221–22, 104 S.Ct. at 1029 (quoting *Baldwin v. Fish & Game Comm'n of Montana,* 436 U.S. 371, 388, 98 S.Ct. 1852, 1863, 56 L.Ed.2d 354 (1978)). Additionally, even if a protected privilege is involved, we may not invalidate the restriction if it is "closely related to the advancement of a substantial state interest." *Friedman,* 487 U.S. at 65, 108 S.Ct. at 2264.

Applying this test, we conclude that O'Reilly is entitled to judgment as a matter of law. With respect to whether a protected privilege is involved, it is well established that "the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause." *United Bldg. & Constr. Trades Council,* 465 U.S. at 219, 104 S.Ct. at 1027. Moreover, the Board has failed to offer evidence suffi-

U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) (city ordinance imposing requirement that in order to qualify for city contracts 40 percent of contractors' employees must live in the city violative even though other citizens of the state were also burdened by the residency requirement).

cient to raise an issue of fact concerning whether use of residency to establish familiarity is closely related to its goal of providing effective taxi service.

The Board contends that familiarity with the geographic region to be served advances its legitimate goal of providing efficient taxi service to the residents of Montgomery County and that long-term residence in the County is indicative of familiarity. While common sense suggests that long-term residency may or may not, depending on the circumstances, familiarize one with an area, O'Reilly submitted a series of affidavits indicating that residency does not provide the type of familiarity that would advance competent taxi service. Although it had ample opportunity, the Board offered no evidence or made other attempts to dispute the opinions contained in O'Reilly's affidavits.

When facing a motion for summary judgment "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment must be entered against a party that fails to make a sufficient showing. *Id.*

Even if the Board could properly conclude that residency is a valid indicator of familiarity, it has failed to establish that it could not determine an applicant's familiarity "through other equally or more effective means that do not themselves infringe constitutional protections." *Friedman,* 487 U.S. at 69, 108 S.Ct. at 2266. O'Reilly has shown through affidavits and exhibits that other similar jurisdictions use a written examination to determine an applicant's familiarity with a specific area. This method could objectively furnish the Board with information to make an informed decision, thereby fully protecting the legitimate interest of providing efficient taxi service, but without constitutional infirmities. The Board again failed to offer any evidence in opposition to this showing and thus failed to make a showing sufficient to survive summary judgment.

Use of residency by the Board to determine familiarity with the geographic area to be served deprives non-resident applicants of the same opportunity to obtain a PVL as residents. The Board has failed to offer evidence sufficient to raise an issue of fact concerning whether the use of residency is closely related to the goal to be advanced by the Board. Consequently, we find that O'Reilly was entitled to judgment as a matter of law.[3] We remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

3. In view of our decision on the privileges and immunities issue, we need not address O'Reilly's allegations that the use of residency also violated the commerce clause.