TANGIER SOUND WATERMAN'S ASSOCIATION; John C. Tyler; Wellington L. Kitchen; Elijah Lee Wilson, Jr.; John Willard Laird; Edwin C. Smith, Jr., Plaintiffs–Appellees,

v.

William A. PRUITT, Commissioner, Virginia Marine Resources Commission, Defendant–Appellant.

No. 92–1712.

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1993.

Decided Aug. 9, 1993.

Frederick S. Fisher, Asst. Atty. Gen., Richmond, VA, argued (Mary Sue Terry, Atty. Gen., on brief), for defendant-appellant.

Stephen A. Goldberg, Gallagher, Evelius & Jones, Baltimore, MD, argued (Julie Ellen Squire, on brief), for plaintiffs-appellees.

Before WIDENER and HAMILTON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

MICHAEL, District Judge:

This is an appeal of a district court decision holding Virginia Code § 28.1–47.1,[1] which established a "Special nonresident harvester's license," in violation of the Privileges and Immunities Clause[2] of the Constitution of the United States and permanently enjoining its enforcement. Jurisdiction in this court lies under 28 U.S.C. § 1291. We affirm.

### I.

In 1991, the General Assembly of the Commonwealth of Virginia adopted the statute in question, thereby tripling the nonresident commercial fisherman's harvester's license fee to $1,150 annually, effective January 1, 1992. The license fee imposed on nonresident commercial fishermen before the change was $350, and was not previously challenged by the nonresident commercial fishermen. The General Assembly justified this increase as appropriate to generate funds to enhance and conserve Virginia's fisheries resources for the benefit of all users. The $1,150 fee was computed by dividing the total expenses for fisheries management and research in 1989–90 by the number of resident commercial fishermen. It is not disputed that the total expenses here embrace expenditures for programs in addition to those characterized as benefiting all commercial fishermen.[3] In addition to this nonresident harvester's license fee, non-

---

1. Title 28.1–47.1 was recodified into Title 28.2–227, effective October 1, 1992, but we cite Title 28.1.

2. "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const., art. IV, § 2.

3. An example of such expenditures is the funding for artificial reef programs, said by joint stipula- tion in the court below to be to enhance "Virginia's marine recreational fisheries...." Several similar programs were likewise identified by Joint Stipulation, having as their sole or partial objectives the promotion and protection of fisheries for marine recreational uses.

resident commercial fishermen are also required to pay all of the license fees applicable to resident commercial fishermen.[4]

The appellees herein, the Tangier Sound Waterman's Association and certain individual Maryland fishermen, filed a complaint in the court below challenging the constitutionality of § 28.1–47.1. The appellees asserted violations of the Privileges and Immunities, Commerce, Equal Protection, and Supremacy Clauses, and a claim that the nonresident harvester's license fee was preempted by federal vessel enrollment laws.

The court below held that § 28.1–47.1 was a violation of the Privileges and Immunities Clause and permanently enjoined enforcement of that statute. At the same time, the court below found that appellees' remaining claims lacked merit. The appellant herein, William A. Pruitt, Commissioner of the Virginia Marine Resources Commission, noted this appeal.

## II.

The matter for decision is a matter of law, reviewed *de novo* in this court.

Both appellant and appellees cite the case of *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), as governing authority in this dispute, and indeed *Toomer* is the leading precedent. There the Supreme Court held that a South Carolina statute requiring nonresidents to pay a license fee of $2,500 per shrimp boat, while the fee for residents was $25, violated the Privileges and Immunities Clause. In so ruling, the Court stated that the Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Id.* at 395, 68 S.Ct. at 1161. However, the Clause "does not preclude disparity of treatment in the many situations where there are perfectly

valid independent reasons for it." *Id.* at 396, 68 S.Ct. at 1162. Thus, "the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them." *Id.* (footnote omitted). Finally, in dictum, the Court wrote, "The State is not without power, for example, ... to charge non-residents a differential which would merely compensate the State for any added enforcement burden they may impose or for any conservation expenditures from taxes which only residents pay." *Id.* at 398–99,[5] 68 S.Ct. at 1163.

This court has recently considered the Privileges and Immunities Clause in *O'Reilly v. Board of Appeals*, 942 F.2d 281 (4th Cir. 1991). In that case, we employed a two-step analysis consistent with the teachings of *Toomer*. First, the examining court must determine whether the privilege sought to be regulated is " 'sufficiently basic to the livelihood of the Nation' as to fall within the purview of the Privileges and Immunities Clause." *Id.* at 284 (citations omitted). Second, if the privilege is thus protected, any restriction thereon must be "closely related to the advancement of a substantial state interest." *Id.* (quoting *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 65, 108 S.Ct. 2260, 2264, 101 L.Ed.2d 56 (1988)).

While the parties posit differing standards, we rely on the rationale of *Toomer* and the framework of *O'Reilly*. With respect to the first step of the *O'Reilly* analysis, it is essentially undisputed that the privilege involved in this case is a protected privilege, being termed by the appellees "the right to earn a living." See *Toomer, supra* 334 U.S. at 403, 68 S.Ct. at 1165. Likewise there is no dispute that § 28.1–47.1 effects a restriction on that privilege. The analysis then proceeds to the question of whether the state has shown a substantial state interest and, if so, wheth-

---

4. In Virginia Code § 28.1–47.1, the General Assembly provided "The license [of $1,150] shall be required of each boat [of nonresident commercial fishermen] ... and shall be in addition to any other licenses required for the activity involved."

5. In a joint stipulation in the court below, it is conceded that the Virginia Marine Resources Commission (VMRC) has conducted no "studies aimed at demonstrating whether nonresidents place either an enforcement or conservation burden on the VMRC or the Commonwealth of Virginia." The appellant makes no further reference to such studies, if any. Further, in the court below, the appellant was unable to identify any savings in cost if no nonresidents used the Virginia fisheries.

er the restriction imposed by the statute is closely related to that interest.

In support of a showing of a substantial state interest, the appellant first asserts that the reason for the nonresident harvester's license fee is to prevent a subsidy of nonresidents by Virginia taxpayers. Specifically, the appellant states in his brief that the reason for the higher fee is "to recover from nonresidents their share of the expenses of managing the resource from which they are benefiting." Appellant's Brief at 8. Because these expenses from the general fund are paid by Virginia's taxpayers, the argument continues, "it is unfair for Virginia taxpayers to be taxed to provide benefits for residents of other states who do not pay Virginia taxes." *Id.*

Further, the appellant argues that the nonresident harvester's license fee serves a substantial state interest because, under *Toomer,* a state may "charge non-residents a differential which would merely compensate the State for any added enforcement burden they may impose or for any conservation expenditures from taxes which only residents pay." *See Toomer,* 334 U.S. at 398–99, 68 S.Ct. at 1163. The Commonwealth cites *Toomer* for the proposition that it may impose a tax or fee on nonresidents to compensate for moneys spent for conservation efforts which benefit resident and nonresident alike but which, absent that fee or tax on nonresidents, would be paid for wholly by residents, by their contribution to the general fund of the Commonwealth.

■ Without passing on these contentions, it suffices to say that the evidence here simply does not bring the application of the statute within that portion of *Toomer.* The additional fee imposed on the nonresidents as computed does not reach to the goal of equality of treatment between resident and nonresident. The fee ignores the payment of the various fees such as a "gear fee," that all the commercial fisherman, resident and nonresident alike, pay to the Commonwealth, and gives no recognition to the Sales and Use taxes paid by the noncommercial fisherman. While these Sales and Use taxes may be less than those paid by resident commercial fisherman, they are nevertheless a factor, along with the regular fees paid by all commercial fisherman, to be accounted for in bringing the statute within this interpretation of this portion of *Toomer.* No evidence before us indicates that this has been done.

The rationale of *Toomer* permits a state to make judgments resulting in discrimination against nonresidents where the state establishes an "advancement of a substantial state interest" as a reason for the disparate treatment, and, in the facts of this case, evenly or approximately evenly distributes the costs imposed on residents and nonresidents to support those programs benefiting both groups. Thus, such a higher tax or fee may be imposed on the nonresident if the object of that higher tax or fee "is to place the burden so that it will bear as nearly as possible equally upon all [resident and nonresident]." See *Travelers Ins. Co. v. Connecticut,* 185 U.S. 364, 372, 22 S.Ct. 673, 676, 46 L.Ed. 949 (1902). A similar rationale guided the Supreme Court in *Austin v. New Hampshire,* 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975) where the Court struck down a "commuter fee" imposed on nonresidents, saying, "the tax falls exclusively on the income of nonresidents; and it is not offset even approximately by other taxes imposed upon residents alone." *Id.* at 665, 95 S.Ct. at 1197.

The *Austin* result is instructive in the case before us, for the record does not disclose that the Commonwealth of Virginia has shown that it created any credible method of allocating costs as between residents and nonresidents which places the burden equally or approximately equally upon residents and nonresidents.

We thus observe in passing that neither of the two bases identified in *Toomer* as possibly justifying a state in imposing different fees on residents and nonresidents applies in this case. Notwithstanding appellant's professed state interests, which taken together amount to a single interest in not subsidizing nonresident fishermen, we need not decide whether appellant's professed interest constitutes a "substantial state interest," for, as in *Toomer,* it is plain that the statute at issue is not closely related to the advancement of that asserted substantial state interest.

In demonstrating that the nonresident harvester's license fee is not closely related to a substantial state interest, the appellees note that nonresident commercial fishermen are required to pay the fees that resident commercial fishermen pay, to pay sales and use taxes on supplies purchased or used in Virginia, and to pay the $1,150 additional fee. Thus, aside from the additional fee, nonresident commercial fishermen contribute to the funds of the Commonwealth. The appellees further point out that the nonresident harvester's license fee was derived by dividing what the state spends on all fishermen, recreational and commercial, by the number of resident commercial fishermen. Thus, the appellees claim that nonresident commercial fishermen are being charged unfairly for programs funded by all taxpayers to benefit all fishermen, whether commercial or sport fishermen. See footnote 3, *supra*. Therefore, the argument goes, assuming that preventing a subsidy to nonresident commercial fishermen is a "substantial state interest," the nonresident harvester's license fee is not closely related to that interest. We agree; it is patent from the record that § 28.1–47.1 does not impose the burden of the fee equally, or approximately equally on resident and nonresident commercial fishermen, for their respective shares of Virginia's expenses of managing her commercial fisheries.

## III.

On the record before us, and in light of the thorough opinion of the court below, we conclude that Virginia has failed to show that the nonresident harvester's license fee established by § 28.1–47.1 is closely related to a substantial state interest as required by *Toomer* and *O'Reilly*. Therefore, we must conclude that the statute violates the Privileges and Immunities Clause. Accordingly, the decision of the court below is

*AFFIRMED.*