**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1064

PETER MALDINI; ROGER CULLEN; PAULA O'BRIEN; ROBERT GUZIKOWSKI; DENITRICE MARKS; MARIA MAISTO; IRMA LAWRENCE; MICHAELA BITTNER; KATHLEEN FRAKES HEVENER; ANNEMARIE AMARENA; BRENT LONG; DAVID VIGGIANO; ERIC FISHON,

Plaintiffs – Appellees,

v.

MARRIOTT INTERNATIONAL, INCORPORATED,

Defendant – Appellant.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

No. 24-1065

PETER MALDINI; ROGER CULLEN; PAULA O'BRIEN; ROBERT GUZIKOWSKI; DENITRICE MARKS; MARIA MAISTO; IRMA LAWRENCE; MICHAELA BITTNER; KATHLEEN FRAKES HEVENER; BRENT LONG; DAVID VIGGIANO; ERIC FISHON; ANNEMARIE AMARENA,

Plaintiffs – Appellees,

v.

ACCENTURE LLP,

Defendant – Appellant.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. John Preston Bailey, United States District Judge for the Northern District of West Virginia, sitting by designation.  (8:19-md-02879-PWG)

Argued:  November 1, 2024                          Decided:  June 3, 2025

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Reversed by published opinion.  Judge Harris wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:**  Matthew S. Hellman, JENNER & BLOCK, LLP, Washington, D.C.; Devin S. Anderson, KIRKLAND & ELLIS, LLP, Washington, D.C., for Appellant.  Samuel Issacharoff, New York, New York, for Appellees.  **ON BRIEF:**  Daniel R. Warren, Lisa M. Ghannoum, Dante A. Marinucci, Kyle T. Cutts, Cleveland, Ohio, Gilbert S. Keteltas, BAKER & HOSTETLER LLP, Washington, D.C.; Lindsay C. Harrison, Elizabeth B. Deutsch, Mary E. Marshall, Emanuel Powell III, JENNER & BLOCK LLP, Washington, D.C., for Appellant Marriott International, Inc.  Craig S. Primis, Emily M. Long, Joseph C. Schroeder, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant Accenture LLP.  Robert H. Klonoff, Portland, Oregon; James J. Pizzirusso, HAUSFELD, LLP, Washington, D.C.; Andrew N. Friedman, COHEN MILSTEIN, PLLC, Washington, D.C.; Amy Keller, DICELLO LEVITT LLP, Chicago, Illinois; Jason L. Lichtman, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, New York, New York, for Appellees. Jennifer B. Dickey, Jordan L. Von Bokern, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Ashley C. Parrish, Washington, D.C., Anne M. Voigts, KING & SPALDING LLP, Palo Alto, California, for Amicus Curiae.

2

PAMELA HARRIS, Circuit Judge:

This is the second time our court has reviewed the certification of plaintiff classes against Marriott International, Inc., and Accenture LLP after hackers breached one of Marriott's guest databases. In our first decision, we held that the district court erred by certifying damages classes against Marriott without first addressing the effect of a contractual class-action waiver signed by all putative class members. But we noted that the district court had questioned whether Marriott timely raised its class-action waiver defense, and left that issue to the district court on remand.

In the decision now on appeal, the district court again declined to enforce the class-action waiver. It did not address the forfeiture issue we had raised in our opinion. Instead, it held that by agreeing to multidistrict litigation in Maryland, Marriott engaged in conduct inconsistent with the class-action bar and thus implicitly waived reliance on that provision. And it suggested that the class-action waiver would in any event be unenforceable because it conflicted with Rule 23 of the Federal Rules of Civil Procedure.

We disagree. Properly understood, the class-action agreement here does not commit the parties to litigate each plaintiff's case "individually" in all respects, and Marriott's participation in consolidated pretrial proceedings is fully consistent with that provision. Nor do the Federal Rules of Civil Procedure prohibit class-action waivers. Accordingly, we reverse the district court's recertification of the damages classes against Marriott. And because it remains the case that the issue classes against Accenture have been justified only in combination with the Marriott damages classes, we reverse the recertification of the Accenture classes, as well.

3

## I.

The extensive proceedings underlying this case are described in detail in our earlier opinion. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023) ("*Marriott I*"). We provide only a summary here, focused on the class-action waiver now at issue. We then briefly describe our first opinion in this case. Finally, we turn to the decision issued by the district court on remand and now before us on appeal.

## A.

In 2018, Marriott announced that hackers had accessed the guest reservation database of a hotel chain, Starwood Hotels & Resorts Worldwide, that Marriott had purchased mid-breach in 2016. Through the database, the hackers were able to view customers' personal information – names, birthdates, phone numbers, and the like – including, in some cases, payment card information. The breach affected roughly 133.7 million guest records, some (but not all) associated with members of the Starwood Preferred Guest Program ("SPG Program"). *Marriott I*, 78 F.4th at 680.

Plaintiffs began suing Marriott, and putative class actions were filed around the country. The United States Judicial Panel on Multidistrict Litigation directed consolidated pretrial proceedings under 28 U.S.C. § 1407, which provides for such "multidistrict litigation" – colloquially, an "MDL" – when civil actions pending in different districts involve common threshold questions. The panel selected the District of Maryland, where Marriott is headquartered, as the transferee district. The plaintiffs added as a defendant

4

Accenture, a third-party provider of IT services to Starwood and then Marriott during the breach.

The plaintiffs' consolidated complaint asserted state-law contract claims and statutory consumer protection claims against Marriott, and state-law negligence claims against both Marriott and Accenture. The parties identified ten "bellwether" claims, arising under different state laws and with representative plaintiffs, on which to test common issues and defenses. As part of that process, they expressly agreed that "neither party was waiving any arguments it may have regarding choice of law and that each party is reserving its rights as to the same." J.A. 408. Marriott and Accenture then moved to dismiss the claims of the representative plaintiffs. *Marriott I*, 78 F.4th at 681.

The district court denied the motions to dismiss in relevant part, allowing the plaintiffs' claims to proceed. At that point, Marriott answered the plaintiffs' complaint. The plaintiffs had yet to clarify which of the many contracts referenced in their complaint they would rely on for their breach claims, so Marriott did not seek enforcement of a specific class-waiver provision. But Marriott did raise as an affirmative defense that the plaintiffs had waived class relief.

After discovery, the plaintiffs moved to certify thirteen classes for breach of contract, consumer fraud, and negligence. It was at this stage that the plaintiffs identified the contract underlying their breach-of-contract claims: the Starwood Preferred Guest Program's "Terms and Conditions" ("SPG Contract"). Section 13.21 of that contract includes the term now at the heart of this case, requiring that disputes "arising out of or

5

related to" the SPG Program or Contract "be handled individually without any class action." J.A. 1466.

Marriott opposed class certification, relying in part on this class-action provision. The proposed contract classes, Marriott argued, could not be certified because those classes were limited to SPG Program members – all of whom had signed the SPG Contract and thus waived their right to proceed by way of class action. The proposed consumer protection and negligence classes, by contrast, included both SPG Program members and non-members. But every named plaintiff was an SPG Program member, and so, Marriott argued, not "typical" of a class that also extended to non-members who were *not* similarly bound by the SPG Contract's class-action waiver. *See* Fed. R. Civ. P. 23(a)(3) (setting out typicality requirement); *Marriott I*, 78 F.4th at 682.

The district court agreed with Marriott, but only in part. To address what it viewed as "serious typicality concerns," the court redefined the non-contract classes against Marriott so that they, like the contract classes, would include only SPG Program members. *Marriott I*, 78 F.4th at 682. The upshot, as we observed in *Marriott I*, was that now "*every* proposed class member litigating against Marriott would be someone who had purportedly given up the right to engage in just such class litigation." *Id*. But the district court did not further consider the import of the contractual class-action provision on class certification, instead deferring a ruling until the merits stage of the litigation. It did suggest, in a footnote, that Marriott might have forfeited reliance on the class-waiver defense by raising it only in a "one-line, boilerplate affirmative defense" and not in bellwether negotiations or a separate motion. *Id*. at 683 (internal quotation marks and citation omitted).

6

The district court proceeded to certify multiple state-specific damages classes against Marriott on the plaintiffs' contract and consumer protection claims. *See id.*; Fed. R. Civ. P. 23(b)(3). On the plaintiffs' negligence claims, it certified "issue" classes against both Marriott and Accenture, limited to the discrete "duty" and "breach" elements of negligence, with the remaining elements – injury and causation – to be resolved, along with damages, in subsequent individualized proceedings. *See Marriott I*, 78 F.4th at 684; Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

The district court recognized that issue classes like these raise special concerns with respect to Rule 23's superiority requirement, under which a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The need for extensive individual litigation on injury, causation, and damages, in other words, called into question the efficiency of threshold class proceedings on just two elements of the plaintiffs' negligence claims. Nevertheless, the court concluded, the negligence issue classes satisfied the superiority requirement for one reason: They would proceed together with the damages classes already certified against Marriott, avoiding "unnecessary duplication." *Marriott I*, 78 F.4th at 684 (internal quotation marks and citation omitted).

**B.**

We granted review under Rule 23(f) of the Federal Rules of Civil Procedure and vacated the district court's class certification order. Three elements of our opinion are critical here.

7

First, we held that the district court erred by failing to "consider, *before* certifying class actions against Marriott, the import of a purported class-action waiver signed by every putative class member." *Marriott I*, 78 F.4th at 685. On that ground, we vacated the certification of all classes against Marriott and remanded to the district court to address the effect of the class-action provision in the first instance. *Id.* at 687.

Second, we questioned the district court's suggestion that Marriott had forfeited its right to enforce the class-action provision. Marriott had raised its class-waiver defense in its answer and again at class certification, we reasoned, and "it is not obvious that more would be required." *Id.* But we recognized that there might be some nuance of Marriott's litigation strategy as to which the district court had a "better vantage point," and so left it to that court on remand to identify any way in which Marriott had failed to preserve its class-waiver defense. *Id.* at 687-88.

Third, we held that vacatur of the Marriott classes necessitated vacatur of the issue classes against Accenture, as well. The district court's "superiority" finding as to the issue classes, we explained, had been justified only by reference to the damages classes certified against Marriott; for the district court, it was "the efficiency benefits of certifying the issue classes *together* with the damages classes against Marriott" that satisfied Rule 23(b)(3)'s superiority requirement. *Id.* at 689. With the sole underpinning of the superiority analysis now removed from the equation, we vacated the issue classes against Accenture. But we invited the district court on remand to reconsider its superiority determination, leaving open the possibility of a rationale de-coupled from the Marriott classes. *Id.* at 690.

8

## C.

That brings us, finally, to the decision now on appeal.  After our opinion in *Marriott I*, the Judicial Panel on Multidistrict Litigation reassigned this action to a different district court judge.  The new district court called for briefing and then, without allowing a hearing, reinstated all classes just as originally certified.  *In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137, 146 (D. Md. 2023) ("*Marriott II*").

The district court found, first, that Marriott had waived reliance on the SPG Contract's class-action provision.  The court recognized that in *Marriott I*, we had indicated that by raising that provision in its answer and again in opposition to class certification, Marriott had done all that was necessary to preserve the argument.  Though it "respectfully disagree[d]," *id.* at 143, the district court did not really take issue with that preservation analysis.  Instead, it adopted an entirely different theory of waiver:  Marriott had waived its class-waiver defense not through "inaction" – failing to timely raise the defense, as discussed in *Marriott I* – but by "tak[ing] actions [] inconsistent with the provision." *Id.* at 142.  Most important, the district court held, Marriott had agreed to consolidated pre-trial MDL proceedings, effectively repudiating the parties' agreement to handle disputes "individually without any class action." *Id.* at 142-43; J.A. 1466.

The crucial premise for the district court's holding was its reading of the class-action provision, mandating that "disputes arising out of or related to" the SPG Program or Contract "be *handled individually without any class action*." J.A. 1466 (emphasis added).  As the district court construed it, that provision was "not merely a class action waiver," but instead a bar on "any collective handling of the claims, including" – but not limited to –

9

"by class action." *Marriott II*, 345 F.R.D. at 143. On that understanding, the district court reasoned, pretrial consolidation of claims in an MDL proceeding was inconsistent with the promise to forgo "any collective handling of [] claims," and so Marriott, by agreeing to an MDL, had given up its class-waiver defense. *Id.*

Moreover, the district court noted, the class-action term was part of an SPG Contract section that also governed choice of law (New York) and venue (New York again). *Id.* at 142.[1] And Marriott acted in a manner inconsistent with those provisions, as well, when it agreed to an MDL in Maryland, and to a bellwether approach that tested claims under various states' laws. *Id.* at 143. Having "waived 5/6" of the relevant provision, the court concluded, Marriott could not enforce the remainder – that is, the class-action waiver. *Id.*

Finally, and apart from its waiver analysis, the district court expressed some "reservations" about the validity of any contractual term that commits the parties to forgo class-wide litigation. *Id.* at 144. In the court's view, such a class-action waiver conflicts with Rule 23 of the Federal Rules of Civil Procedure, governing class actions. As the court saw it, "parties cannot by agreement dictate that a district court must ignore" Rule 23's class-certification provisions, rendering any contract to that effect unenforceable in federal courts. *Id.* at 145.

---

[1] The relevant section of the SPG Contract provides:

13.21 *Choice of Law and Venue*. Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action, and will be governed by, construed and enforced in accordance with the laws of the State of New York . . . . [Such disputes] may be filed only in the state or federal courts located in the State of New York[.]

J.A. 1466.

Accordingly, the district court recertified the classes against Marriott. And without further analysis of superiority, it also recertified the issue classes against Accenture. *See id.* at 146. Marriott and Accenture timely petitioned for permission to appeal under Rule 23(f) of the Federal Rules of Civil Procedure, and we again granted permission.

**II.**

We review a district court's ruling on class certification for abuse of discretion. *Gregory v. Finova Cap. Corp.*, 442 F.3d 188, 190 (4th Cir. 2006). "A district court per se abuses its discretion when it makes an error of law or clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

We conclude that the district court erred in finding that Marriott may not rely on the class-action waiver signed by all putative members of the certified classes. We also agree with Marriott that the class-action provision is valid and applicable to the claims at issue here, and so precludes certification of all classes against Marriott. And because the pendency of class-action litigation against Marriott remains the only predicate for

11

certification of the issue classes against Accenture, those classes, too, are unsustainable. Accordingly, we reverse in full the district court's class certification order.[2]

## A.

We begin with the district court's holding that Marriott gave up its defense under the SPG Contract's class-action waiver provision. For the reasons given below, we disagree.

### 1.

We turn first to the "waiver" question – really, a forfeiture question[3] – raised in the district court's initial certification order and discussed in *Marriott I*: whether Marriott gave up its right to invoke the class-action waiver in the SPG Contract by failing to properly raise and preserve that defense. As we said in *Marriott I*, we saw no grounds for a forfeiture. But we remanded to the district court in case its "on the scene presence" had raised some concern about a particular of Marriott's litigation strategy. *Marriott I*, 78 F.4th at 687-88 (internal quotation marks omitted). Through no fault of its own, of course, the new district court to which the case was transferred had no special "vantage point" into the earlier proceedings, *cf. id.*, and perhaps for that reason, it did not address this matter. We

---

[2] As we explained in our first decision, the original certification of these multiple classes involved a whole series of important and disputed rulings that we had no occasion to address in our ruling. *Marriott I*, 78 F.4th at 685 n.4. The same is true today, and as before, our decision, resting as it does on the import of the SPG Contract's class-action waiver, expresses no view on other aspects of the original certification decision.

[3] "[F]orfeiture is the failure to make the timely assertion of a right, [while] waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks and citation omitted).

close the loop now, finding – as we previewed in *Marriott I* – that Marriott properly preserved its class-waiver defense.

As noted in *Marriott I*, Marriott invoked its class-waiver defense in its answer, and again in opposing class certification – precisely the stage, we held, at which a district court should consider the effect of a class-action waiver. *See id.* at 686, 687. And there is more. Marriott also raised a class-waiver defense in its motion to dismiss, and during discovery it identified the SPG Contract's class waiver, specifically, as the basis of that defense. These have been complex and lengthy proceedings. But Marriott did not fail to raise its class-waiver defense at any point at which it was required to do so, and its invocation in opposition to class certification could not have surprised the plaintiffs or deprived them of a fair opportunity to object. *See In re Under Seal*, 749 F.3d 276, 286 (4th Cir. 2014) (explaining "forfeiture and waiver rules . . . avoid unfair surprise to the other party") (internal quotation marks and citation omitted)).

2.

We turn now to what the district court did decide: that Marriott waived – that is, intentionally relinquished – reliance on the SPG Contract's class-action provision through affirmative conduct inconsistent with that provision. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (framing waiver question as whether a party "knowingly relinquish[ed]" a contractual right "by acting inconsistently with that right"). Specifically, the district court held, Marriott's participation in consolidated MDL proceedings was the very "antithesis" of its contractual agreement to handle cases "individually without any

13

class action," and thus precluded Marriott from relying on the class-action provision. *Marriott II*, 345 F.R.D. at 142-43. We disagree.

The district court's waiver theory turns critically on its reading of the SPG Contract's class-action provision. That provision, again, requires that covered disputes "be handled individually without any class action." J.A. 1466. As the district court saw it, that is an overarching commitment to litigate every dispute "individually," prohibiting "any collective handling of the claims, *including* by class action." *Marriott II*, 345 F.R.D. at 143 (emphasis added). And because MDLs are inconsistent with the "handled individually" half of the contractual term, the district court reasoned, Marriott's participation in an MDL meant that it had relinquished its right to enforce the "without any class action" half, as well.

We read the provision differently. It does not state that disputes must be handled "individually without any MDLs." Nor does it impose a freestanding requirement that disputes be "handled individually" in every respect, with a bar on class actions *included* – along with other non-"individual" proceedings – in that general term. If that were so, of course, "handled individually" would already prohibit class actions, and the addition of "without any class action" would be entirely superfluous. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (applying "cardinal principle of contract construction" that contract must be read to "give effect to all its provisions"). Instead, we read "without any class action" as serving a very important function, defining the term "handled individually" to *mean* "without any class action." In short, this provision is what the parties and courts have understood it to be all along: a class-action waiver. *See, e.g.*,

14

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 149-50 & n.26 (D. Md. 2022) (original certification order); *Marriott I*, 78 F.4th at 680-81, 685-88.[4]

Moreover, we agree with Marriott that even if the provision could be read as an overarching commitment to litigate only "individually," participation in an MDL would not be incompatible with that commitment. It is well established that the constituent cases in an MDL "remain separate actions despite being coordinated or consolidated for pretrial purposes," temporarily brought together at the pretrial stage and then remanded back to their courts of origin for trial. *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 n.13 (9th Cir. 2011); *see also In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 648 (4th Cir. 2018); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35-36 (1998). Parties in an MDL do not act in a representative capacity, and pretrial MDL consolidation does not strip cases of their "individual" nature. We can find no other court holding that a defendant's participation in

---

[4] When parties to a contract agree that claims must be handled individually in every respect and without any form of collective or consolidated treatment, they know how to say so. *See, e.g.*, *Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 667 (9th Cir. 2025) (signatories may not bring "claims as or participat[e] in any kind of [] class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding"). By contrast, parties often agree to class-action waivers using language similar to that in the SPG Contract. *See, e.g.*, *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1344 (S.D. Fla. 2017) (litigation must be handled "individually and not as a member of any class"); *Lindsay v. Carnival Corp.*, No. 20-cv-982 (TSZ), 2021 WL 2682566, at *1 (W.D. Wash. June 30, 2021) (disputes "shall be litigated by you individually and not as a member of any class").

an MDL deprives it of the right to rely on a contractual class-waiver defense, and we will not be the first.

The district court also suggested that Marriott waived reliance on the class-action provision more indirectly, through conduct inconsistent not with that provision itself but with accompanying venue and choice-of-law terms. As the district court explained, the same section of the SPG Contract that bars class litigation also provides for venue in New York and the application of New York law. *See Marriott II*, 345 F.R.D. at 142 (quoting and describing § 13.21); J.A. 1466. For the district court, all parts of that section operate as an indivisible whole, so that Marriott, by agreeing to MDL proceedings in Maryland and to bellwether cases litigated under various state laws, waived reliance not only on the venue and choice-of-law provisions but also on the class-action provision. *Marriott II*, 345 F.R.D. at 143.

But that reading of § 13.21 is foreclosed by the plain terms of the SPG Contract, which includes a severability clause: "If any part of [the SPG Contract] is held to be unlawful or unenforceable, that part will be deemed deleted . . . and the remaining provisions will remain in force[.]" J.A. 1466. The entire point of such a clause is to make an agreement divisible, allowing the parties to enforce each contract right as a standalone commitment. So even if Marriott waived the venue or choice-of-law provisions, in other words, the "remaining" class-action waiver would "remain in force," as the parties agreed. *Id.*

Nor does it seem to be the case, as the district court assumed, that Marriott *did* waive § 13.21's venue and choice-of-law provisions through inconsistent conduct. Marriott did

16

agree to an MDL in Maryland, where Marriott is headquartered – as did the "vast majority of responding plaintiffs." J.A. 153 (transfer order). But an MDL's venue does not dictate venue for the underlying actions. *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (U.S. Jud. Pan. Mult. Lit. 2020) ("Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue."); *see Looper v. Cook Inc.*, 20 F.4th 387, 392 (7th Cir. 2021) (MDL is "an artificial forum created for purposes of convenience and efficiency"). Instead, venue questions in the constituent cases are resolved after pretrial MDL proceedings conclude. *See In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 2d 1378, 1379 (U.S. Jud. Pan. Mult. Lit. 2009). And Marriott did – again like the plaintiffs – agree to bellwether proceedings to be conducted under the laws of states other than New York. But in doing so, both parties jointly and expressly *reserved* all choice-of-law arguments. J.A. 408 (stipulating that "neither party was waiving any arguments it may have regarding choice of law and that each party is reserving its rights as to the same"). A "reservation of rights" may not be an "assertion of rights," as the district court reasoned, *Marriott II*, 345 F.R.D. at 143, but a joint reservation like this one is hard to square with the concept of waiver as a knowing relinquishment of rights.

Though perhaps unnecessary, we note one final problem for the district court's waiver-by-inconsistent-conduct theory. The conduct the district court points to as inconsistent with § 13.21's venue, choice-of-law, and class-waiver provisions – agreeing to an MDL, agreeing to an MDL in Maryland, identifying bellwether claims to be tested under various states' laws – occurred before the plaintiffs moved in 2021 for class

17

certification and identified the SPG Contract as the basis for their breach of contract claims, narrowing their contracts classes accordingly.  And neither the district court nor the plaintiffs has explained how Marriott could intentionally abandon a known right under the SPG Contract, *see Olano*, 507 U.S. at 733 (defining waiver), through actions taken *before* it knew the SPG Contract was at issue.

**B.**

The district court also suggested that even if Marriott had not waived the class-action term in the SPG Contract, that term would be invalid and unenforceable because it conflicts with Rule 23's class-action provisions.  *See Marriott II*, 345 F.R.D. at 145-46 (discussing Fed. R. Civ. P. 23).  The plaintiffs do not meaningfully defend that suggestion on appeal, and we may dispense with it briefly here.[5]

The district court relied on a magistrate judge's 2009 decision for the proposition that Rule 23 precludes contractual waivers of class-wide litigation.  *See id*. (quoting *Martrano v. Quizno's Franchise Co., L.L.C.*, No. 09-cv-0932, 2009 WL 1704469, at \*20-21 (W.D. Pa. June 15, 2009) (unpublished decision)).  But more recent law is to the contrary.  The Supreme Court made clear in 2013 that parties may indeed waive class-

---

[5] The plaintiffs do suggest that the class-waiver is inconsistent with Rule 42 of the Federal Rules of Civil Procedure, which governs consolidation of proceedings.  As the plaintiffs read the class provision, again, it bars *any* collective treatment of claims, including but not limited to class actions.  And on that reading, they say, there is a conflict with Rule 42 because a court would be unable to undertake even basic forms of consolidation, like coordinating discovery or creating a document depository to govern multiple cases.  But as explained above, the class provision is properly read as applying only to class actions – which takes care of the plaintiffs' concerns about shared document depositories and the like.

action litigation by contract. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (holding that congressional approval of Rule 23 does not "establish an entitlement to class proceedings"; rejecting proposition that "federal law secures a nonwaivable *opportunity* to vindicate federal policies by satisfying the procedural strictures of Rule 23"). Courts now routinely enforce contractual class-action waivers – including, contrary to the district court's suggestion, *Marriott II*, 345 F.R.D. at 144, in cases that do not involve an arbitration agreement, because "there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract." *Convergys Corp. v. NLRB*, 866 F.3d 635, 639 (5th Cir. 2017). Indeed, it would make "little sense" if "an arbitration agreement could take the more drastic step of entirely waiving a federal court forum, including the right to proceed collectively," but a contract unaccompanied by an arbitration agreement "could not waive the right to proceed collectively in court while preserving the right to bring suit on an individual claim." *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 692 (S.D. Tex. 2013).[6]

---

[6] In seeking to distinguish this established authority, the district court pointed to the specific wording of the SPG Contract class-action waiver. As the court understood the relevant term – disputes "will be handled individually without any class action" – it bound not the parties to the SPG Contract but rather the district court itself, and for that reason conflicted with Rule 23. *Marriott II*, 345 F.R.D. at 144-45 ("In this case the [class-action waiver] does not state that SPG members will not bring or participate in class actions. Rather, it seeks to limit this Court's own authority by stating that 'any disputes . . . will be handled individually.' The parties cannot by agreement dictate that a district court must ignore the provisions of Rule 23 of the Federal Rules of Civil Procedure."); *see also id.* at 142 ("Rather than referencing the parties, this provision purports to control the court's management of the litigation, i.e. will be handled individually."). But there is nothing special about this class-action waiver. Passive voice notwithstanding, it reflects the agreement of the *parties* to forgo class litigation, and nothing more.

The district court also hinted, almost as an aside, that the class-action waiver is invalid as unconscionable. *See Marriott II*, 345 F.R.D. at 146 (referring to class-waiver as an "adhesive provision, buried on the last page" of the SPG Contract) (footnote omitted)); *id.* at 142 (noting that the heading of § 13.21 does not refer to class actions). If that is what the court intended, it is mistaken. The parties agree that New York law governs this question, and in New York, "a contractual proscription against class actions is neither unconscionable nor violative of public policy." *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) (summary order) (citation omitted); *see also Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law . . . have uniformly held that class action waivers are not unconscionable.") (collecting New York authority).

There is nothing so "grossly unreasonable" about the SPG Contract's class-action waiver that it would fall outside this norm. *See Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (contract will be deemed unconscionable only if it is "grossly unreasonable or unconscionable in the light of the mores and business practices of the time"). Notwithstanding the district court's "adhesive" label, nothing suggests that the plaintiffs had no "meaningful choice" but to agree to Marriott's terms. *See id.* In New York, even "[t]ake it or leave it tactics (and a general refusal to negotiate) are permitted when the party in an inferior bargaining position" – here, potential Marriott customers – "can simply contract with a suitable replacement" if they are unhappy with the terms on offer. *Spinelli v. Nat'l Football League*, No. 13-cv-7398 (RWS), 2016 WL 3926446, at *3 (S.D.N.Y. July 15, 2016); *see also Nayal*, 620 F. Supp. 2d at 571-72. And the features of

20

the class-waiver flagged by the district court – location and heading – are simply not enough to find unconscionability in New York. *See Matter of Conifer Realty LLC (EnviroTech Servs., Inc.)*, 106 A.D.3d 1251, 1253 (N.Y. App. Div. 2013) (provision's placement on last page of contract did not make it unconscionable); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 253 (N.Y. App. Div. 1998) (finding no procedural unconscionability when an arbitration clause was "in no way 'hidden' or 'tucked away' within a complex document of inordinate length"). The class-waiver provision appeared in the contract's body, in the same font as the rest of the contract, and on equal footing with all other terms, which is all that New York law requires. *See, e.g.*, *Coe v. Coca-Cola Co.*, 702 F. Supp. 3d 140, 158 (W.D.N.Y. 2023) (provision not unconscionable when "set out in the same font, size, and format as the rest of the Terms of Use provisions – no fine print").[7]

## C.

Having established that Marriott did not waive reliance on the class-waiver provision in the SPG Contract and that the provision is not invalid, the only remaining

---

[7] It is of course true, as the plaintiffs' citations indicate, that a contract *may* be found unconscionable under New York law under the right, "grossly unreasonable" circumstances. *See, e.g.*, *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 345 (W.D.N.Y. 2017) (finding unconscionability where contract mandates application of the law of foreign territories to federal securities claims). But those cases are readily distinguishable from the standard class-waiver provision at issue here. The plaintiffs also call to our attention, by way of a Rule 28(j) letter, *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), a case applying California unconscionability law. Our inquiry, of course, is governed by New York law. But putting that to one side, *Heckman*, too, involves the kind of "grossly unreasonable" provisions missing here. *See id.* at 682 (finding unconscionable terms that may be changed unilaterally and without notice and then applied retroactively).

question is whether the class-waiver applies to the plaintiffs' claims. The district court did not address this issue, appearing to assume the provision's applicability for purposes of its decision. Ordinarily, we might send that question back to the district court for an initial ruling – as we did in our first opinion. *Marriott I*, 78 F.4th at 688 (leaving issue of applicability to district court on remand). But on this second pass, we think it is appropriate to resolve the issue now. Applicability is a pure question of law, fully briefed on remand, and it is not clear what "would be gained by another remand for [another] decision by the district court[.]" *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989); *see O'Reilly v. Bd. of Appeals of Montgomery Cnty.*, 942 F.2d 281, 284 (4th Cir. 1991) (reaching legal question in the first instance where "another remand . . . would be an unnecessary waste of judicial and litigant resources").

The class-action waiver here applies to "[a]ny disputes arising out of or related to the SPG Program or [the SPG Contract]." J.A. 1466. The plaintiffs do not dispute that their contract claims, alleging a breach of a privacy statement incorporated into the SPG Contract, are covered by this provision. But they argued on remand that their consumer protection and negligence claims fall outside the provision's scope.

As our court has emphasized, the "arising out of or related to" language sweeps especially broadly, "embrac[ing] every dispute between the parties having a significant relationship to the contract regardless of the label attached" to the claims, be it contract or tort. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (internal quotation marks and citation omitted) (finding tort claims fell within scope of clause covering matters "arising out of or related to" contract); *see J.J. Ryan & Sons v.*

22

*Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (contrasting narrow arbitration clauses that cover only claims "arising under" a contract with broader language extending also to claims "related to" a contract). New York law likewise recognizes that the "arising out of or related to" formulation signifies an intent to reach beyond breach of contract claims to reach other causes of action connected to the same subject matter. *See Monroe Staffing Servs., LLC v. Whitaker*, No. 20-cv-1716 (GBD) (BCM), 2023 WL 4249012, at *2-3 (S.D.N.Y. June 29, 2023) ("[P]rovisions applying to disputes 'arising out of['] or 'relating to' a contract are capacious enough to reach related tort claims[.]"); *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994) (choice-of-law clause "*arising out of or relating to* this contract or breach thereof" is "sufficiently broad to cover tort claims as well as contract claims").

Given its broad "arising out of or related to" language, the class waiver here applies to the plaintiffs' consumer-protection and negligence claims as well as their contract claims. Whether or not the plaintiffs' non-contract claims relate to the SPG *Contract*, they seem clearly to relate to the SPG *Program*. That is the program under which the plaintiffs provided the information at the heart of all of their claims; the personal data that Marriott and Accenture allegedly failed to properly safeguard comes from the plaintiffs' SPG Program accounts. It is also the program under which the plaintiffs – to obtain the benefits of program membership – made the hotel reservations for which they allege they overpaid. We think that is enough to bring their claims under the broad umbrella of the class waiver's "arising under or related to" clause.

23

\* \* \*

In sum, we find that Marriott has not given up its class-waiver defense under the SPG Contract, that the plaintiffs' waiver of class litigation is valid and enforceable, and that the waiver applies to the plaintiffs' claims. That precludes certification of the classes against Marriott, and we therefore reverse the district court's recertification of those classes.

**D.**

That leaves the issue classes certified against Accenture on two elements of the plaintiffs' negligence claims. We vacated those classes in *Marriott I* because the original certification order based the requisite finding of superiority, *see* Fed. R. Civ. P. 23(b)(3), exclusively on the existence of the Marriott damages classes, which were no longer going forward. We find ourselves in precisely the same posture today. We invited the district court on remand to further analyze superiority, perhaps identifying an alternative rationale independent of the Marriott classes. But the district court did not take us up on that offer, and so it remains the case, after two passes by district courts, that there has been no superiority finding that can survive the vacatur of the Marriott classes.

As we explained in *Marriott I*, this is especially problematic when it comes to the certification of issue classes on individual elements of a cause of action – here, on the duty-of-care and breach elements of the plaintiffs' negligence claims. 78 F.4th at 688.[8] Such

---

[8] As we noted in *Marriott I*, although the courts appear to be coalescing around the view that issue classes limited to individual liability elements may be appropriate in the right circumstances, our court has not passed directly on the issue and it is not "entirely (Continued)

24

element-by-element classes necessarily diminish the efficiency gains of class proceedings, because they leave other elements – here, injury and causation – for separate individual trials, along with damages. And where, as here, those remaining separate proceedings will require significant resources, the issue classes will do little to address the "incentive problem" – individual plaintiffs with too little at stake to justify individual litigation – that class action otherwise may alleviate. *Id.* at 689. For those reasons, we cautioned, "the superiority of class proceedings simply cannot be taken for granted" with respect to Rule 23(c)(4) issue classes on discrete elements of a cause of action. *Id.* at 690.

But that is effectively what the plaintiffs ask us to do now. The original certification order carefully considered this question and identified one and only one reason the issue classes would bring the requisite "efficiency benefits": what the court saw as crucial overlap between those class proceedings and the damages class actions against Marriott. *See Marriott I*, 78 F.4th at 689-90. Given our holding as to the Marriott classes, that reason no longer pertains. And the district court on remand has identified no other factor that might support a superiority finding.

Under these circumstances, we decline to order "another remand" to the district court as "an unnecessary waste of judicial and litigant resources." *O'Reilly*, 942 F.2d at 284. It is often difficult for element-by-element issue classes to satisfy Rule 23(b)(3)'s superiority requirement, *see Marriott I*, 78 F.4th at 689 ("[T]he superiority component of Rule 23(b)(3) frequently comes into play to defeat issue certification."), and this case is no

---

free from doubt." 78 F.4th at 689. As in *Marriott I*, we need not resolve that question today.

25

exception.  Absent the Marriott damages classes, no grounds have been identified, and none are apparent to us, for finding that these threshold narrow issue classes, followed (hypothetically) by individual trials on liability and damages, are a superior method of resolving the negligence claims against Accenture.  Accordingly, having held that the classes against Marriott must be decertified, we also reverse the district court's recertification of the issue classes against Accenture.

### III.

For the foregoing reasons, the judgment of the district court is reversed.

*REVERSED*